# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>ROB BONTA, in his capacity as Attorney General of the State of California, et al.<br><br>Defendants. | CASE NO. 22-cv-10-LAB (DEB)<br><br>**ORDER:**<br><br>**1) DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER [Dkt. 9];**<br><br>**2) CONDITIONALLY GRANTING MOTION TO PROCEED PSEUDONYMOUSLY [Dkt. 11];**<br><br>**3) SETTING BRIEFING SCHEDULE FOR MOTION FOR PRELIMINARY INJUNCTION; and**<br><br>**4) SETTING BRIEFING SCHEDULE FOR MOTION TO DISMISS** |

Plaintiffs Jane Doe and John Doe Nos. 1 through 4 filed an *ex parte* Application for a Temporary Restraining Order and an Order to Show Cause Re: Preliminary Injunction ("TRO Application") and an *ex parte* Motion for a Protective Order and to Proceed Using Pseudonyms. Defendant Rob Bonta, in his capacity as Attorney General of the State of California, filed briefs in opposition to both motions. For the reasons stated at the hearing and summarized in this Order, the Court **DENIES** the TRO Application and **CONDITIONALLY GRANTS** the Motion for a Protective Order and to Proceed Using Pseudonyms.

**BACKGROUND**

California Assembly Bill 173 went into effect on September 23, 2021. The statute permits the California Department of Justice ("DOJ") to disclose data from the Automated Firearms System ("AFS") and the Dealer Record of Sale System ("DROS," and together with "AFS," the "Databases") to the California Firearm Violence Research Center and other "nonprofit bona fide research institution[s] accredited by the United States Department of Education or the Counsel for Higher Education Accreditation for the study of the prevention of violence." Cal. Penal Code § 11106(c). The Databases, which predate AB 173's enactment, include information on applicants for concealed carry permits, firearm purchasers, and ammunition purchasers, including names, addresses, places and dates of birth, state driver's license or other identification numbers, telephone numbers, sex, occupations, and physical descriptions.[1]

Plaintiffs contend that the disclosure of their personal information, which they were compelled to furnish in order to purchase and register firearms, purchase ammunition, or obtain a permit to carry a concealed firearm, violates their Fourteenth Amendment right to information privacy, chills their Second Amendment activity, directly violates their Second Amendment rights, and infringes on their privacy rights under California's constitution and statutes.[2]

---

[1] The parties dispute whether AFS includes social security numbers. Those numbers are disclosed on concealed carry permit applications, one source from which the AFS system is populated. (Plaintiffs' Request for Judicial Notice, Ex. 6, Dkt. 9-7). Nevertheless, the statute establishing AFS does not call for inclusion of social security numbers and the Attorney General has presented evidence that "social security information is not generally recorded in [AFS]." *See* Cal. Penal Code § 11106; (Decl. of Trent Simmons, Dkt. 19-2 ¶ 17).

[2] The parties dispute whether AFS includes social security numbers. Those numbers are disclosed on concealed carry permit applications, one source from which the AFS system is populated. (Plaintiffs' Request for Judicial Notice, Ex. 6, Dkt. 9-7). Nevertheless, the statute establishing AFS does not call for inclusion of social security numbers and the Attorney General has presented evidence that "social security information is not generally recorded in [AFS]." *See* Cal. Penal Code § 11106; (Decl. of Trent Simmons, Dkt. 19-2 ¶ 17).

## ANALYSIS

The standard for obtaining a temporary restraining order is identical to the standard for obtaining a preliminary injunction, with the primary difference being duration: preliminary injunctions remain in force throughout the litigation, while TROs, which are traditionally entered on an *ex parte* basis, are limited to 14 days. *See* Fed. R. Civ. Pro. 65(b)(2). To obtain either form of relief, Plaintiffs must establish "that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Temporary restraining orders "are emergency measures, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested, and the irreparable harm must therefore be clearly immediate." *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1309 (E.D. Cal. 2020), citing *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

There is no emergency here. AB 173 was enacted on September 23, 2021, and Plaintiffs didn't seek a temporary restraining order until January 10, 2022, 108 days later. Before Plaintiffs filed their TRO Motion, the California Department of Justice implemented disclosure procedures and disclosed the Databases to researchers at two research institutions. (Dkt. 19-2 ¶¶ 15, 20).[3] While Plaintiffs contend that AB 173 made a series of amendments to a tangled web of California statutes, and this complexity played a part in the delay, at least one prominent interest group was decrying the bill's effects on September 7, 2021, sixteen days before its enactment. *See* National Rifle Association Institute for Legislative Action ("NRA-ILA"), *California: Your Privacy is at Stake!*, September 7, 2021, available at https://www.nraila.org/articles/20210907/california-your-

---

[3] One such disclosure was made in part *before* AB 173's passage. (Dkt. 19-2 ¶ 20).

privacy-is-at-stake.[4]

Moreover, no irreparable harm is likely to occur in the next fourteen days. There are currently no applications for new extractions of data from the Databases, and given that two such extractions have already occurred, the harm represented by the pending application to allow additional users at one of the institutions that already possesses data is *de minimis*. (*See* Dkt. 19-2 ¶ 22). Moreover, recipients are barred from public dissemination of personal information, and must submit any research based on the data to DOJ for pre-publication review to ensure that the manuscripts don't contain any information identifying specific individuals. (*Id.* ¶ 12). In reaching this determination, the Court relies on counsel's assurance at the hearing that the California DOJ will prevent publication of any manuscript containing such personal biographical information.

Because Plaintiffs haven't shown the need for immediate injunctive relief, the TRO Motion is **DENIED**.

The Motion for a Protective Order and to Proceed Using Pseudonyms is **CONDITIONALLY GRANTED**. Protection of the Plaintiffs' identities is at the core of this case, and so the Court will not require them to disclose their names as a condition of seeking relief. But because it would put Defendant at an unfair disadvantage if Plaintiffs' identities and personal information were shielded completely, the Court **ORDERS** Plaintiffs, in consultation with Defendant, to submit a proposed protective order on or before **January 26, 2022**. That proposed order must establish confidentiality provisions covering Plaintiffs' personal information and directing disclosure of Plaintiffs' identities only to Defendant.

---

[4] While the NRA has claimed credit for the filing of this litigation, that organization is not a party. *See* NRA-ILA, "NRA-ILA Asks Court for Temporary Restraining Order to Protect California Gun Owners' Privacy," January 11, 2022, available at https://www.nraila.org/articles/20220111/nra-ila-asks-court-for-temporary-restraining-order-to-protect-california-gun-owners-privacy. The Court does not treat this document as an admission that the harm was known to plaintiffs, only that it was reasonably *knowable* far sooner than three-and-a-half months after AB 173's passage.

Any motion for preliminary injunction must be filed on or before **February 8, 2022**, and will be heard on **March 8, 2022 at 10:00 a.m.** Any brief in opposition must be filed on or before **February 22, 2022**, and any reply must be filed on or before **March 1, 2022**.

Defendant's time to respond to the Complaint is **EXTENDED** to **February 9, 2022**. If Defendant moves to dismiss the Complaint, any response must be filed on or before **February 25, 2022**, and any reply must be filed on or before **March 4, 2022**. Any such motion will also be heard on **March 8, 2022 at 10:00 a.m.**

**IT IS SO ORDERED**.

Dated: January 20, 2022

*[signature]*

**HON. LARRY ALAN BURNS**
United States District Judge