1  Michael B. Reynolds, Bar No. 174534
   mreynolds@swlaw.com
2  Colin R. Higgins, Bar No. 268364
   chiggins@swlaw.com
3  Cameron J. Schlagel, Bar No. 320732
   cschlgel@swlaw.com
4  SNELL & WILMER L.L.P.
   600 Anton Blvd, Suite 1400
5  Costa Mesa, California 92626-7689
   Telephone:  714.427.7000
6  Facsimile:   714.427.7799

7  Attorneys for Plaintiffs

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  JANE DOE, an individual; JOHN DOE      Case No. 3:22-cv-00010-LAB-DEB
    NO. 1, an individual; JOHN DOE NO.
13  2, an individual; JOHN DOE NO. 3, an
    individual; and JOHN DOE NO. 4, an
14  individual,                            **Plaintiffs' Notice of Motion and**
                                           **Motion for Preliminary Injunction;**
15              Plaintiffs,                **Supporting Memorandum of Points**
                                           **and Authorities**
16       v.
                                           [*Filed concurrently with Request for*
17  ROB BONTA, in his official capacity as *Judicial Notice, and Declarations of*
    Attorney General of the State of       *Jane Doe 1, John Doe 1, John Doe 2,*
18  California; and DOES 1-25, inclusive,  *John Doe 3, and John Doe 4 and*
                                           *Proposed Order*]
19              Defendants.
                                           **Hearing Information**
20
                                           Date:      March 8, 2022
21                                         Time:      10:00 a.m.
                                           Ctrm:      14A
22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 8, 2022 at 10:00 a.m. in Courtroom 14A of the above-referenced Court, located at 333 West Broadway, San Diego, California 92101, Plaintiffs Jane Doe, John Doe No. 1, John Doe No. 2, John Doe No. 3, and John Doe No. 4 (collectively, "Plaintiffs") will and hereby do move the Court for a preliminary injunction enjoining Rob Bonta, in his official capacity as Attorney General of the State of California ("Defendant" and/or the "Attorney General") from enforcing California Penal Code sections 11106, 14231, and 30352, as amended by Assembly Bill 173, 2021 Cal. Stat., Ch. 253 ("AB 173" and/or the "AB 173 Amendments"), and enjoining any person or entity in active concert with Defendant through their possession of Plaintiffs' sensitive personal information, including but not limited to the CFVRC and Stanford University, from using that information for any purpose.

This motion (the "Motion") is made pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the Fourteenth and Second Amendments to the United States Constitution.  This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities attached hereto, the contemporaneously-filed Request for Judicial Notice and Declarations of the Plaintiffs, the papers and pleadings from this case on file with the Court, all other matters of which this Court may take judicial notice, any further evidence or argument offered to the Court at any hearing on this Motion, and any other matters that the Court may consider.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626/7689

1   Dated: February 8, 2022                Respectfully submitted,

2                                          SNELL & WILMER L.L.P.

3

4                                          By: _____

5                                          Michael B Reynolds
                                           Colin R. Higgins
6                                          Cameron J. Schlagel
                                           Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

Notice of Motion and Motion for Preliminary Injunction          (22-cv-0010)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 11

II. STATEMENT OF FACTS ................................................... 11

    A. The AB 173 Amendments. .......................................... 12

        1. Penal Code § 11106. ........................................... 12

            a. Before the AB 173 Amendments. ................... 12

            b. After the AB 173 Amendments. .................... 14

        2. Penal Code § 14231 ........................................... 15

            a. Before the AB 173 Amendments. ................... 15

            b. After the AB 173 Amendments. .................... 16

        3. Penal Code § 30352 ........................................... 17

            a. Before the AB 173 Amendments. ................... 17

            b. After the AB 173 Amendments. .................... 17

    B. Actual and Potential Injury to Plaintiffs. ...................... 18

III. THE PRELIMINARY INJUNCTION STANDARD ................... 20

IV. PLAINTIFFS WILL PREVAIL ON THE MERITS ................... 20

    A. The AB 173 Amendments Violate Plaintiffs' Fourteenth Amendment Right to Privacy in Their Confidential Personal Information. ............................................................... 20

        1. Plaintiffs Have a Reasonable Expectation of Confidentiality. ................................................. 21

        2. The AB 173 Amendments Are Insufficiently Tailored to Meet the Government's Legitimate Interests. ..................... 23

            a. The State's Interest Defined. ......................... 23

            b. AB 173 Is Not Narrowly Tailored. ................ 23

    B. The AB 173 Amendments Violate Plaintiffs' Fourteenth Amendment Rights by Impermissibly Chilling Plaintiffs' Exercise of their Second Amendment Rights. ..................... 27

    C. The AB 173 Amendments Directly Violate Plaintiffs' Second Amendment Rights. .............................................. 29

        1. The Core Second Amendment Right. ...................... 29

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 4 -

1

**TABLE OF CONTENTS**
(continued)

2                                                                                    **Page**

3          2.    Standards of Scrutiny ................................................... 30

4          3.    The AB 173 Amendments Fail Either Level of Scrutiny .......... 30

5      D.   The AB 173 Amendments Are Unconstitutionally Retroactive in
            Violation of Plaintiffs' Fourteenth Amendment Rights. ..................... 31
6

7   V.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ............................ 33

    VI.   AN INJUNCTION WILL SERVE THE PUBLIC INTEREST .................... 34
8
    VII.  CONCLUSION ............................................................................ 35
9

10

11

12

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Preliminary Injunction          (22-cv-0010)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alliance of the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ........................................................................20

*Ams. for Prosperity Foundation v. Bonta,*
    141 S. Ct. 2373 (2021) .....................................................................................30

*Associated General Contractors v. Coalition For Economic Equity,*
    950 F.2d 1401 (9th Cir.1991) ..........................................................................33

*Barry v. City of New York,*
    712 F.2d 1554 (2d Cir. 1983) ..........................................................................23

*Bauer v. Becerra,*
    858 F.3d 1216 (9th Cir. 2017) .........................................................................29

*Bellotti v. Baird,*
    443 U.S. 622 (1979)..........................................................................................28

*Bernhardt v. Los Angeles County,*
    339 F.3d 920 (9th Cir. 2003) ...........................................................................35

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*
    321 F.3d 878 (9th Cir. 2003) ...........................................................................20

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)..........................................................................................29

*Ditullio v. Boehm,*
    662 F.3d 1091 (9th Cir. 2011) .........................................................................32

*Doe v. Attorney General,*
    941 F.2d 780 (9th Cir. 1991) ...........................................................21, 24, 27

*Doe v. City of New York,*
    15 F.3d 264 (2d Cir. 1994) ..............................................................................21

*Drakes Bay Oyster Co. v. Jewell,*
    747 F.3d 1073 (9th Cir. 2014) .........................................................................34

*Edenfield v. Fane,*
    507 U.S. 761 (1993)..........................................................................................31

*Elrod v. Burns,*
    427 U.S. 347 (1976)..........................................................................................33

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ...........................................................................29

*Garrett v. City of Escondido,*
    465 F. Supp. 2d 1043 (S.D. Cal. 2006) ...........................................................33

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Crawford,*
  194 F.3d 954 (9th Cir. 1999) ...............................................................21, 23, 24, 25
*Klein v. City of San Clemente,*
  584 F.3d 1196 (9th Cir. 2009) ..................................................................................23
*Lamont v. Postmaster General,*
  381 U.S. 301 (1965).................................................................................................27
*Landgraf v. Usi Film Prods.,*
  511 U.S. 244 (1994).............................................................................................31, 32
*Latta v. Otter,*
  771 F.3d 496 (9th Cir. 2014) ...................................................................................33
*Mai v. United States,*
  952 F.3d 1106 (9th Cir. 2020) .................................................................................31
*Martin v. Hadix,*
  527 U.S. 343 (1999).................................................................................................32
*McDougall v. Cnty. of Ventura,*
  No. 20-56220, slip op. at 37 (9th Cir. Jan. 20, 2022)............................................31
*NAACP v. Alabama ex rel. Patterson,*
  357 U.S. 449 (1958).............................................................................................27, 28
*Nixon v. Adm'r of General Servs.,*
  433 U.S. 425 (1977).............................................................................................20, 26
*Norman-Bloodsaw v. Lawrence Berkeley Lab'y,*
  135 F.3d 1260 (9th Cir. 1998) .................................................................................27
*Petroleum Expl. v. Pub. Serv. Comm'n of Kentucky,*
  304 U.S. 209 (1938).................................................................................................34
*Planned Parenthood of Se. Pa. v. Casey,*
  505 U.S. 833 (1992).................................................................................................27
*Planned Parenthood of Southern Arizona v. Lawall,*
  307 F.3d 783 (9th Cir. 2002) ...............................................................................21, 27
*Preminger v. Principi,*
  422 F.3d 815 (9th Cir. 2005) ...................................................................................34
*Shelton v. Tucker,*
  364 U.S. 479 (1960).................................................................................................30
*Silvester v. Harris,*
  843 F.3d 816 (9th Cir. 2016) ...................................................................................30
*Southern Arizona v. Lawall,*
  307 F.3d 783 (9th Cir. 2002) ...................................................................................21
*Talley v. California,*
  362 U.S. 60 (1960)...................................................................................................27

S NELL & W ILMER
——— L.L.P. ———
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 7 -

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Teixeira v. Cty. of Alameda*,

4
873 F.3d 670 (9th Cir. 2017) ............................................................... 29

*Thornburgh v. American College of Obstetricians and Gynecologists*,

5
476 U.S. 747 (1965) ............................................................... 27, 28

6
*Thorne v. El Segundo*,

7
726 F.2d 459 (9th Cir. 1983) ............................................................... 27

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*,

8
489 U.S. 749 (1989) ............................................................... 20

9
*United States v. Chovan*,
735 F.3d 1127 (9th Cir. 2013) ............................................................... 29, 30

10
*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982) ............................................................... 32

11
*United States v. Westinghouse Elec. Corp.*,

12
638 F.2d 570 (3d Cir. 1980) ............................................................... 24

13
*Usery v. Turner Elkhorn Mining Co.*,
428 U.S. 1 (1976) ............................................................... 31

14
*Walls v. Petersburg*,
895 F.2d 188 (4th Cir. 1990) ............................................................... 21

15
*Warren v. City of Chico*,

16
No. 2:21-CV-00640-MCE-DMC, 2021 WL 2894648 (E.D. Cal. July 8,
2021) ............................................................... 34

17
*Whalen v. Roe*,

18
429 U.S. 589 (1977) ............................................................... 20, 25, 26

19

## STATUTES

20
5 U.S.C. § 552a ............................................................... 26, 27

21
5 U.S.C. § 552a(b) ............................................................... 26

22
5 U.S.C. § 552a(d) ............................................................... 26
5 U.S.C. § 552a(g)(1) ............................................................... 26

23
5 U.S.C. §§ 552a(d)–(f) ............................................................... 26
Cal. Civ. Code § 1798.24 ............................................................... 27

24
Cal. Civ. Code § 1798.25 ............................................................... 27

25
Cal. Gov't Code § 6250 ............................................................... 27
Cal. Gov't Code § 6254(u)(1) ............................................................... 12

26
Cal. Gov't Code §§ 6205–6209 ............................................................... 34

27
Cal. Gov't Code § 6254.21(c) ............................................................... 35
Cal. Pen. Code § 11105 ............................................................... 17

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Pen. Code § 11105(b)....................................................................................17
Cal. Pen. Code § 11105(b)(1)–(6)....................................................................13, 14
Cal. Pen. Code § 11105(b)–(c)..........................................................................17
Cal. Pen. Code § 11105(c)..................................................................................17
Cal. Pen. Code § 11105(g)..................................................................................17
Cal. Pen. Code § 11106...................................................................................passim
Cal. Pen. Code § 11106(a)(1).....................................................................13, 14, 22
Cal. Pen. Code § 11106(a)(2)..............................................................................32
Cal. Pen. Code § 11106(b)(1)(A)........................................................................13
Cal. Pen. Code § 11106(b)(1)(C)........................................................................13
Cal. Pen. Code § 11106(b)(1)(F)........................................................................13
Cal. Pen. Code § 11106(b)(1)(I).........................................................................13
Cal. Pen. Code § 11106(b)(2)–(3).......................................................................22
Cal. Pen. Code § 11106(b)(2)(A)........................................................................13
Cal. Pen. Code § 11106(b)(2)(A)–(B)..................................................................13
Cal. Pen. Code § 11106(c)........................................................................13, 14, 22, 32
Cal. Pen. Code § 11106(c)(1)........................................................................13, 14
Cal. Pen. Code § 11106(c)(2)(A)........................................................................13
Cal. Pen. Code § 11106(c)(2)(B)........................................................................13
Cal. Pen. Code § 11106(c)–(d)............................................................................32
Cal. Pen. Code § 11106(d)........................................................................14, 25, 26
Cal. Pen. Code § 14231...................................................................................passim
Cal. Pen. Code § 14231(a)..................................................................................23
Cal. Pen. Code § 14231(a)(1)(A)........................................................................18
Cal. Pen. Code § 14231(a)(1)(C)........................................................................24
Cal. Pen. Code § 14231(a)(2)..............................................................................15
Cal. Pen. Code § 14231(c)............................................................................15, 16
Cal. Pen. Code § 14231(c)(1)–(3)........................................................................16
Cal. Pen. Code § 14231(f)...................................................................................16
Cal. Pen. Code § 14231(g)..................................................................................16
Cal. Pen. Code § 26175.......................................................................................12
Cal. Pen. Code § 28050.......................................................................................12
Cal. Pen. Code § 28210.......................................................................................12
Cal. Pen. Code § 28215.......................................................................................12
Cal. Pen. Code § 30312.......................................................................................12
Cal. Pen. Code § 30352...................................................................................passim
Cal. Pen. Code § 30352(a)..................................................................................12
Cal. Pen. Code § 30352(a)–(b)............................................................................17

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Cal. Pen. Code § 30352(b)................................................................12, 17
Cal. Pen. Code § 30352(b)(1)–(2) .................................................17
Cal. Pen. Code § 30352(b)(2)..................................................25, 26
U.S. Const., Amend. II .................................................................29
U.S. Const., Amend. XIV .............................................................31

# REGULATIONS

11 Cal. Code Regs. § 4200 ...........................................................12
11 Cal. Code Regs. § 4281(d)........................................................12

# OTHER AUTHORITIES

2016 Cal. Legis. Serv. Ch. 24 (A.B. 1602) § 30 (WEST)....................15
2016 Cal. Legis. Serv. Prop. 63, § 13 (WEST) ................................17
2021 Cal. Stat., Ch. 253, § 11 ......................................................17
2021 Cal. Stat., Ch. 253, § 2.5 .....................................................14
2021 Cal. Stat., Ch. 253, § 5 ........................................................16
AB 173 .............................................................................passim
ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS 126–28 (2012)..................................................16
ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS 195–213 (2012)................................................22
Emma Nolan, *The Rebecca Schaeffer Case and How it Changed Anti-*
    *Stalking Laws*, MEDIUM, Feb. 16, 2019 ...................................34

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

The AB 173 Amendments cannot stand for at least four reasons:

- They violate the privacy rights of Plaintiffs and millions of other law-abiding Californians under the Due Process Clause of the Fourteenth Amendment because the government's dissemination of Plaintiffs' personal, confidential information is not "narrowly tailored" to meet the state's interest in preventing firearm crimes and violence.

- They violate Plaintiffs' due process rights under the Fourteenth Amendment because they will chill the exercise of constitutionally-protected fundamental rights under the Second Amendment.

- They violate Plaintiffs' rights under the Second Amendment because the state cannot show, with "substantial evidence," that the challenged laws are a "reasonable fit" to alleviate the harm of firearm crimes and violence.

- They are also impermissibly retroactive in violation of the Fourteenth Amendment because they impair rights that Plaintiffs possessed when they acted and attach new consequences to conduct and transactions already completed.

Plaintiffs will be irreparably harmed without an injunction. An injunction is also in the public interest.  The Court should therefore enjoin enforcement of the AB 173 Amendments *pendente lite*.

## II.

## <u>STATEMENT OF FACTS[1]</u>

Defendant is charged with enforcing California's comprehensive scheme of statutes and regulations governing the sale and possession of firearms and

---

[1] Plaintiffs provided a detailed statement of facts in their Application for a TRO (the "<u>TRO Appl.</u>") [ECF No. 9], and only summarize them here.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

ammunition.  Every person who purchases a firearm or ammunition, or who applies for a license to carry a concealed firearm ("Carry License"), is required by law to provide sensitive personal information to the state, including name, address, place of birth, phone number, occupation, sex, California driver's license or ID number ("Personal Information").[2]  In addition, with respect to Carry Licenses, this Personal Information includes social security numbers and home and business addresses—locations at which a Carry License holder is more likely to be attacked.[3]

The California Department of Justice ("Cal DOJ") maintains the information from Carry Licenses and applications, as well as firearm sales, in a registry called the "Automated Firearms System" (the "AFS").[4]  The Cal DOJ maintains ammunition purchaser information in the "Ammunition Purchase Records File" database (the "APRF"; jointly with the AFS, the "Databases").[5]

## A.   The AB 173 Amendments.

On September 23, 2021, Governor Newsom signed AB 173 into law as a budget trailer bill,[6] amending the Penal Code as follows:

### 1.   Penal Code § 11106.

#### a.   *Before the AB 173 Amendments.*

This section directs the Attorney General to maintain Plaintiffs' Personal Information in the AFS and defines the permissible uses of that information.

---

[2] *See* Penal Code §§ 26175, 28050, 28210, 28215, 30312, 30352; Pls.' Req. for Judicial Notice (the "RJN"), Ex. 3 at 69, 75–98, 110–12; *id.*, Ex. 4.

[3] *See* Cal. Gov't Code § 6254(u)(1) (prohibiting disclosure of Carry Licensing information that indicates "when or where the applicant is vulnerable to attack").

[4] The AFS is a "repository of firearm records maintained by the [Cal DOJ], as established by Penal Code section 11106," 11 Cal. Code Regs. § 4281(d), and consists of Personal Information, RJN, Ex. 6.  *See also* TRO Appl. at 13 n.2.

[5] Penal Code § 30352(b).  *See also* RJN, Ex. 3 at 69, 75–98; 11 Cal. Code Regs. §§ 4200, *et seq.*

[6] RJN, Ex.1

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Specifically, the statute provides that, "[i]n order to assist in the investigation of crime, the prosecution of civil actions by city attorneys . . . , the arrest and prosecution of criminals, and the recovery of lost, stolen, or found property,"[7] the Attorney General "shall permanently keep" and maintain a registry (i.e., the AFS) of, *inter alia*, copies of licenses to carry firearms and all firearms-related transaction information reported to the Cal DOJ,[8] which includes Plaintiffs' Personal Information.[9]

That language unambiguously provides the statute's purpose is to facilitate traditional law-enforcement functions like criminal investigations and arrests. Subdivision (c), in turn, authorizes a limited subset of officers and agencies to disseminate an individual's Personal Information under certain enumerated conditions.[10] That exception is strikingly narrow: the dissemination of an individual's Personal Information is authorized only if the "subject of the record" has received due process through a criminal or civil proceeding,[11] and the recipients of Personal Information are limited to the subject's victim (i.e., in the domestic violence context).[12] Furthermore, the exception is limited to the officers referred to in Section 11105(b)(1)–(6),[13] which itself encompasses only "criminal history information," and restricts what may be disseminated to a limited subset of data.[14] Notably, with the exception of the subject's name, Section 11106(c)(1) excludes all other personal information listed in Section 11106(b)(2)(A).

---

[7] Penal Code § 11106(a)(1).

[8] *Id.* §§ 11106(b)(1)(A), (C), (F), & (I).

[9] *See id.* § 11106(b)(2)(A)–(B); *see also* Pls.' TRO Appl. [ECF No. 9] at 13 n.2; Pls.' Req. for J. Notice in Supp. of TRO (the "<u>TRO RJN</u>") [ECF No. 9-1], Ex. 6.

[10] Penal Code § 11106(c).

[11] *Id.* § 11106(c)(2)(A).

[12] *Id.* § 11106(c)(2)(B).

[13] These include only: state courts; peace officers; district attorneys; prosecuting city attorneys; city attorneys pursuing gang injunctions or drug abatement; and probation officers. *Id.* § 11105(b)(1)–(6).

[14] *Id.* § 11106(c)(1).

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Before the AB 173 Amendments, subdivision (c) was the only provision that authorized dissemination of Personal Information.[15]  As law-abiding citizens not subject to domestic-violence complaints, Plaintiffs would have had no reason to believe their Personal Information would be disclosed to third-party researchers for public-policy research.  In other words, their expectation of confidentiality was well founded under the statutory scheme.

### b.    After the AB 173 Amendments.

AB 173 added subdivision (d) to Section 11106, authorizing Defendant to turn over all information in the Databases to researchers affiliated with the Firearm Violence Research Center (the "CFVRC" or "Center") and to "any other nonprofit bona fide research institution" accredited "for the study of the prevention of violence and following approval by the institution's governing institutional review board or human subjects committee when required."[16]  This changed prior law in three important ways:

(i)    Prior law did not allow the Attorney General to share information in the Databases with outside researchers.

(ii)    Prior law allowed the Attorney General to disseminate information in the Databases only with courts, peace officers and probation officers, prosecutors, and city attorneys.[17]  Moreover, the purpose of such dissemination was limited to assisting with investigations, arrests, prosecutions,[18] and to victims of domestic violence.[19]  Notably, purposes such as policy research, understanding violence and preventing suicide do

[15] *Compare id.* § 11106 (eff. Jan. 1, 2021), *with id.* § 11106 (eff. Sept. 23, 2021) (added subdivision (d)).  For the full legislative history of Section 11106, see Pls.' Compl. [ECF No. 1] at ¶ 76 n.22.  *See also* Pls.' TRO Appl. [ECF No. 11] at 15 n.5.
[16] 2021 Cal. Stat., Ch. 253, § 2.5; Penal Code § 11106 (eff. Sept. 23, 2021).
[17] Penal Code § 11106(c)(1) (cross-referencing *id.* § 11105(b)(1)–(6)).
[18] *Id.* § 11106(a)(1).
[19] *Id.* § 11106(c).

- 14 -

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

not appear anywhere in any previous versions of the statute—or any cross-referenced statutes—that would have put Plaintiffs on notice that their Personal Information would one day be shared with third parties for research purposes, which are wholly unrelated to assisting in "investigation of crime" or "the arrest and prosecution of criminals."

(iii)    The new statute does not define "nonprofit bona fide research institution" or establish the criteria for determining whether an applicant seeking Plaintiffs' Personal Information is a "nonprofit bona fide research institution."  Nor does the statute require any particular definition to be adopted by regulation, or to remain unchanged once adopted.  In other words, the phrase "nonprofit bona fide research institution" could encompass advocacy groups whose interests are inimical to those of Plaintiffs, depending on the whims of the Attorney General in office at the time of the application.

2.    Penal Code § 14231.

a.    *Before the AB 173 Amendments.*

Newly-enacted in 2016, Section 14231 established the CFVRC and set its administration standards.[20]  As enacted, Section 14231 stated the purpose of the CFVRC broadly, to conduct "transformative research with a mission to provide the scientific evidence on which sound firearm violence prevention policies and programs can be based."[21]  Section 14231 directed the Attorney General to provide "the data necessary for the [C]enter to conduct its research."[22]  ***But critically***, this direction was "[s]ubject to the conditions and requirements established elsewhere in

---

[20] *See* Penal Code § 14231 (eff. June 27, 2016 to Sept. 22, 2021); 2016 Cal. Legis. Serv. Ch. 24 (A.B. 1602) § 30 (WEST).
[21] Penal Code § 14231(a)(2) (eff. June 26, 2016).
[22] *Id.* § 14231(c) (eff. June 26, 2016).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

statute"[23]—conditions and requirements that included existing confidentiality protections.

Nor did the statute specify what data the legislature considered "necessary for the [C]enter to conduct its research."  Nor did it cross-reference other statutes.[24]

Based on the ordinary meaning of the 2016 version of Section 14231, reasonable law-abiding persons would not understand that statute as authorizing dissemination of their Personal Information to third-party, public researchers for purposes unrelated to criminal investigations, arrests and prosecutions.  To the contrary, in view of the subordinating language in subdivision (c)—"[s]ubject to the conditions and requirements established elsewhere in statute"—the only reasonable construction of Sections 14231 and 11106 (before the AB 173 Amendments), is that Section 11106's limitations on dissemination of Personal Information, discussed above, prevail over Section 14231(c)'s conditional directive, thus removing Plaintiffs' Personal Information from the scope of Section 14231.[25]

    b.    *After the AB 173 Amendments.*

AB 173 added subdivisions (c)(1)–(3), (f), and (g), establishing and expressing the intent to furnish CFVRC with access to the Databases.[26]  To the extent this is a "clarifying statute," these new subdivisions "clarified" the legislature's intent to ***expand*** access to the Databases—essentially conceding that Plaintiffs had a reasonable expectation of confidentiality concerning the information in the Databases until passage of the AB 173 Amendments.

---

[23] *Id.*

[24] Even as amended by AB 173, Section 14231 does not cross-reference other relevant statutes, nor does it define what data is "necessary for the center to conduct its research."  *See* Penal Code § 14231 (eff. Sept. 23, 2021).

[25]  *See* ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 126–28 (2012) (subordinating language, signaled by "subject to," indicates which statutory provision prevails); *see also id.* at 183–88.

[26]  2021 Cal. Stat., Ch. 253, § 5; Penal Code § 14231 (eff. Sept. 23, 2021).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

3.      Penal Code § 30352

    a.      *Before the AB 173 Amendments.*

Enacted as a ballot measure in 2016, this statute requires ammunition purchasers to provide their Personal Information to the Cal DOJ, which then stores it in the APRF database.[27]  Before the AB 173 Amendments, when Plaintiffs purchased ammunition, Section 30352(b) expressly provided that the Personal Information in the APRF database "shall *remain confidential*" and could be used by the Cal DOJ and other agencies "through the California Law Enforcement Telecommunications System *only for law enforcement purposes*," specifically those cross-referenced purposes under Sections 11105(b) and (c).[28]

It is noteworthy that, as its title suggests, Section 11105 concerns the use of "criminal history information."  The only reference to "research" appears in Section 11105(g) which states: "It is not a violation . . . to disseminate statistical or research information obtained from a record, *provided that the identity of the subject of the record is not disclosed*."[29]

    b.      *After the AB 173 Amendments.*

AB 173 added subdivisions (b)(1)–(2), removing prior confidentiality protections and expanding the uses of Personal Information to include "research" and the recipients of Personal Information to include the CFVRC and other "nonprofit bona fide" research institutions.[30]

As with the revisions to Section 11106, prior law did not allow the Attorney General to share information in the Databases with outside researchers, but

[27] Penal Code § 30352(a)–(b) (eff. Jan. 1, 2017 to Sept. 22, 2021); 2016 Cal. Legis. Serv. Prop. 63, § 13 (WEST).
[28] Penal Code § 30352(b) (eff. Jan. 1, 2017 to Sept. 22, 2021) (emphasis added) (cross-referencing Penal Code § 11105(b)–(c)).
[29] Penal Code § 11105(g) (emphasis added).
[30] *See* 2021 Cal. Stat., Ch. 253, § 11; Penal Code § 30352 (eff. Sept. 23, 2021); *see also* RJN Ex. 2.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

restricted the sharing of information to other government agencies for purposes of law enforcement.  The same examples in the cross-referenced statutes of "law enforcement purposes" exist, but do not include policy research, understanding violence and prevention of suicide.  Likewise, the new statute does not define "nonprofit bona fide research institution," establish criteria for determining whether an applicant seeking Plaintiffs' Personal Information is a "nonprofit bona fide research institution," nor require any particular definition to be adopted by regulation, or to remain unchanged once adopted.

In sum, before the AB 173 Amendments were enacted, Plaintiffs relied on sections 11106, 14231, and 30352—particularly the express limitations on dissemination therein—and reasonably expected that their Personal Information would be used only for authorized law-enforcement purposes and would otherwise be kept confidential.  Those statutes did not provide notice that Plaintiffs' Personal Information would be disseminated to third-parties, let alone for such an amorphous purpose as researching "the nature of firearm violence,"[31] or "helping society understand firearms and better address violence"[32]—violence with which Plaintiffs were not involved.

## B.     Actual and Potential Injury to Plaintiffs.

Plaintiffs are law-abiding residents who have purchased firearms and ammunition in California.[33]  As a condition on the exercise of their Second Amendment rights, Plaintiffs and millions of other law-abiding California residents provided their highly sensitive Personal Information to the Cal DOJ in reliance on

---

[31] Penal Code § 14231(a)(1)(A).

[32] Def.'s TRO Opp'n [ECF No. 19] at 12:10–11.

[33] Decl. of Jane Doe (the "Jane Doe Decl.") ¶¶ 3, 5, 7; Decl. of John Doe No. 1 (the "Doe 1 Decl.") ¶¶ 3, 5, 7; Decl. of John Doe No. 2 (the "Doe 2 Decl.") ¶¶ 3, 5, 7; Decl. of John Doe No. 3 (the "Doe 3 Decl.") ¶¶ 3, 5, 7; Decl. of John Doe No. 4 (the "Doe 4 Decl.") ¶¶ 3, 5–6.  Additionally, Plaintiff John Doe 4 has a Carry License.  Doe 4 Decl. ¶ 7.

- 18 -

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

those features of California law that provided assurance that their information would be kept confidential and used only for law-enforcement purposes.[34]

Plaintiffs' personal privacy and physical security will be threatened by releasing their Personal Information to third party researchers.[35]  The AB 173 Amendments violate Plaintiffs' reasonable expectation of confidentiality under prior law.  Furthermore, firearm owners often encounter concerted harassment, which sometimes includes violence,[36] and they are frequent targets of criminal efforts to steal firearms from their homes and businesses.[37]  Turning over Plaintiffs' Personal Information to third parties thus greatly increases the risk of further unauthorized dissemination,[38] and increases the likelihood of Plaintiffs' lawfully-owned firearms falling into the hands of criminals.

The injury to Plaintiffs is imminent and irreparable.  Without an injunction, Defendant will implement and enforce the AB 173 Amendments, in derogation of Plaintiffs' constitutional rights.  Defendant concedes he has already disseminated Plaintiffs' Personal Information to UC Davis and Stanford—causing a constitutional injury for which there is no remedy.[39]  An injunction is necessary to prevent further dissemination and constitutional injury.

---

[34]   Jane Doe Decl. ¶¶ 5, 7-8; Doe 1 Decl. ¶¶ 5, 7-8; Doe 2 Decl. ¶¶ 5, 7-8; Doe 3 Decl. ¶¶ 5, 7-8; Doe 4 Decl. ¶¶ 5–6, 9.

[35]   Jane Doe Decl. ¶ 13; Doe 1 Decl. ¶ 13; Doe 2 Decl. ¶ 13; Doe 3 Decl. ¶ 13; Doe 4 Decl. ¶ 14.

[36]   *See* TRO Appl. [ECF No. 9] at 15 n.6 (citing sources).

[37]   *See id.* at 16 n.7 (citing sources).

[38]   *See id.* at 16 n.8 (citing sources).

[39]   *See* Jane Doe Decl. ¶¶ 11–13; Doe 1 Decl. ¶¶ 11–13; Doe 2 Decl. ¶¶ 11–13; Doe 3 Decl. ¶¶ 11–13; Doe 4 Decl. ¶¶ 12–14.

- 19 -

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# III.

## THE PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is warranted where the movant demonstrates "(1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) that its claims raise serious questions as to the merits and that the balance of the hardships tips in its favor." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003); *see also Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit utilizes a sliding scale approach under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance*, *supra*, 632 F.3d at 1131.

# IV.

## PLAINTIFFS WILL PREVAIL ON THE MERITS

Plaintiffs seek only to prevent *dissemination* of their Personal Information to third-party researchers and for purposes beyond those enumerated in the original statutory scheme, which include assisting in criminal investigations, arrests and prosecutions.

**A.     The AB 173 Amendments Violate Plaintiffs' Fourteenth Amendment Right to Privacy in Their Confidential Personal Information.**

The "Fourteenth Amendment's concept of personal liberty protects the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 598 n.23, 599 (1977); *see also Nixon v. Adm'r of General Servs.*, 433 U.S. 425, 457 (1977) (reaffirming right to privacy in personal information).  That right includes a "privacy interest in keeping personal facts away from the public eye." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 769 (1989).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1      This is particularly true when the government provides assurances that the
2  information it collects will remain confidential and be used only for specific
3  purposes.  *See Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783,
4  789–90 (9th Cir. 2002); *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)
5  (informational privacy in confidential information); *see also Doe v. City of New*
6  *York*, 15 F.3d 264, 267 (2d Cir. 1994) (Fourteenth Amendment right to
7  "confidentiality"), *cited with approval in Crawford*, 194 F.3d at 958; *Walls v.*
8  *Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) (similar effect).  That right may be
9  infringed only if the government establishes that its use of the protected information
10 "would advance a legitimate state interest and that its actions are narrowly tailored
11 to meet the legitimate interest." *Crawford*, 194 F.3d at 959 (quoting *Doe v.*
12 *Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)).
13     As discussed below, Plaintiffs have a reasonable expectation of
14 confidentiality with respect to their Personal Information.  As a result, the Attorney
15 General bears the burden of demonstrating that the AB 173 Amendments are
16 narrowly tailored to meet a legitimate governmental interest.
17
18     1.   <u>Plaintiffs Have a Reasonable Expectation of Confidentiality.</u>
19     The Ninth Circuit recognizes the right to informational privacy in
20 confidential personal information that arises "both when an individual chooses not
21 to disclose highly sensitive information to the government and when an individual
22 seeks assurance that such information will not be made public." *Planned*
23 *Parenthood*, 307 F.3d at 789–90; *Crawford*, 194 F.3d at 958; *see also Walls*, 895
24 F.2d at 192 (informational privacy right is characterized by a "reasonable
25 expectation[ ] of confidentiality").
26     Here, when Plaintiffs disclosed their Personal Information to the Cal DOJ the
27 laws then in effect—the versions of Penal Code sections 11106, 14231, and 30352
28 that were effective before the AB 173 Amendments—authorized dissemination of

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 21 -

Personal Information only for law-enforcement purposes under narrow, criminal-investigatory and domestic-violence-related circumstances.  The phrase "law enforcement purposes" is delimited by the purposes enumerated in the relevant statutes, which refer to traditional law enforcement functions like investigations, arrests, and prosecutions.  *See, e.g.,* Penal Code §§ 11106(a)(1), (b)(2)–(3), (c) (eff. Jan. 1, 2021); ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195–213 (2012) (the "Associated-Words Canon" and "*Ejusdem Generis* Canon").

Indeed, the California legislature and courts have a long history of narrowly defining the phrase "law enforcement purposes," requiring "a concrete and definite prospect" of "criminal law enforcement proceedings."[40]  Plaintiffs, being law-abiding residents with no domestic-violence history, relied on those laws and that historic understanding of the phrase.  As discussed above, they were reasonable in

_____

[40] The California Public Records statute exempts:

> Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice … or any investigatory or security files complied by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency **for correctional, law enforcement, or licensing** purposes.

Cal. Gov't Code § 6254(f) (emphasis added).

Courts have read this statute narrowly for almost 50 years, because a broad reading would mean that everything "investigatory" would be exempt from disclosure:

> The adjective "law enforcement" as used in the subdivision, refers to law enforcement in the traditional sense – that is, to the enforcement of penal statutes, etc.  Unless there is a concrete and definite prospect of such criminal law enforcement, the subdivision does not apply.  We say this because we suspect that every administrative agency in state government enforces one or more statutes and in the course of such enforcement conducts investigations… Surely the Legislature did not intend to include within the official information privilege all of such files . . . .

*State of California ex rel. Div. of Indus. Safety v. Sup. Ct.*, 43 Cal. App. 3d 778, 783–84 (1974); *Dixon v. Sup. Ct.*, 170 Cal. App. 4th 1271, 1277–78 (2009) (Same).

SNELL & WILMER
LAW OFFICES
LLP.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 22 -

their expectation that the Cal DOJ would maintain the confidentiality of their Personal Information.

### 2.   The AB 173 Amendments Are Insufficiently Tailored to Meet the Government's Legitimate Interests.

#### a.    The State's Interest Defined.

The CFVRC was established for the purpose of conducting research into firearm violence and to identify, implement, and evaluate firearm violence prevention programs.  Penal Code § 14231(a).  In Defendant's words, the state's interest is in "helping society understand firearms and better address violence."[41] The AB 173 Amendments are not sufficiently tailored to that interest.

#### b.    AB 173 Is Not Narrowly Tailored.

The government bears the burden of showing that dissemination of information is "narrowly tailored" to achieving its legitimate interest.  *Crawford*, 194 F.3d at 959; *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009) (although the plaintiff "has the general burden of establishing the elements necessary to obtain injunctive relief," the government has the burden of justifying the challenged law).[42]  "[T]he degree of intrusion stemming from public exposure of the details of a person's life is exponentially greater than [that stemming from] disclosure to government officials."  *Barry v. City of New York*, 712 F.2d 1554, 1561 (2d Cir. 1983), *approved by Crawford*, 194 F.3d at 959.

To determine "whether the government may properly disclose private information," courts in the Ninth Circuit must balance "the government's interest in

---

[41] Def.'s TRO Opp'n [ECF No. 19] at 12:10–11.

[42] In his Opposition to Plaintiff's Application for a TRO, Defendant failed to address how the AB 173 Amendments are narrowly tailored, as Ninth Circuit precedent requires.  *See* [ECF No. 19] at 11:6–13:23.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

having or using the information against the individual's interest in denying access," *Doe*, 941 F.2d at 796, weighing, among other factors:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (*United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir. 1980))*.*

In the present case, Defendant must prove that the bulk dissemination of Plaintiffs' Personal Information to third party researchers is necessary to achieve the state's interest.  That is an impossible task.  The wholesale distribution of Plaintiffs' Personal Information to third-party researchers and "nonprofit bona fide research institutions" is not a narrowly tailored means of achieving the state's interest in the "prevention and treatment of firearm violence."  Penal Code § 14231(a)(1)(C).

The Ninth Circuit's decision in *Crawford* is instructive.  That case involved a statute requiring non-attorney bankruptcy petition preparers to provide their social security number on the bankruptcy petitions they prepared, which are public records under the Bankruptcy Code.  194 F.3d at 956–57.  In requiring that disclosure, Congress found that bankruptcy petition preparers are frequently associated with bankruptcy fraud and often exceed their non-attorney roles.  *See id.* at 957.  In view of those facts, the Ninth Circuit held that the disclosure was narrowly tailored to achieve the government's interest in preventing bankruptcy fraud and was consistent with the Bankruptcy Code's "public access" provision, which the court noted was "long-recognized in the common law and buttressed by the First Amendment."  *Id.* at 960.

Unlike the bankruptcy petition preparers in *Crawford*, this case involves the exercise of a fundamental constitutional right.  Moreover, Plaintiffs here are law-abiding citizens—who passed background checks every time they acquired a

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

firearm—as are millions of other similarly situated persons whose Personal Information is now suddenly subject to disclosure.  They have not committed any crimes, let alone "firearm-related violence."

Nor is there any legislative finding that law-abiding firearm owners who have passed background checks are frequently involved in firearm violence.  *Cf. Crawford*, 194 F.3d at 957.  That is unsurprising because there simply is no basis for such a finding.  For example, in a 2018 analysis of firearms used in the commission of crimes, the Cal DOJ reported that none of the firearms were confirmed to be stolen, six were identified as illegal assault weapons (i.e., not legally purchased or possessed), and "[o]wnership status was not determined for many of the firearms examined."[43]  The latter finding implies that most, if not all, of the firearms were illegally possessed; if they had been purchased legally, the Cal DOJ could have determined ownership from the Databases.  Indeed, it appears that the extensive Databases, which Cal DOJ presently claims will help research violence, were effectively useless to the Cal DOJ's research of firearm-related crimes.  As that example illustrates, the wholesale disclosure of Plaintiffs' Personal Information, as Sections 11106(d) and 30352(b)(2) require, is completely untethered to the state's interest in developing policies that target firearm-related crimes and violence, which law-abiding citizens (such as Plaintiffs) do not commit.

Further to that point, in *NASA* and *Whalen*, the Supreme Court considered whether the government had a sufficient reason to compel disclosure and, if it did, whether the government's use of that information was permissible and its safeguards adequate.  The *NASA* decision turned upon the government's role "as proprietor" and "manager of its 'internal operation'" as opposed to its "sovereign power 'to regulate or license.'" *NASA*, 562 U.S. at 148 (citations omitted).  The *Whalen* decision turned on the sufficiency of safeguards to prevent *the government*

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

---

[43]   RJN Ex. 7 at 141.

*and its employees* from improperly disseminating private information. *Whalen*, 429 U.S. at 605; *see also, Nixon*, 433 U.S. at 458–59; *NASA*, 562 U.S. at 155-56.

The Federal Privacy Act at issue in the cases referenced above prohibits the government from disclosing private records without the subject's written consent. 5 U.S.C. § 552a(b).  It establishes a process for aggrieved persons to object to the government's use of their information. *Id.* §§ 552a(d)–(f).  Perhaps most important, it confers standing on aggrieved individuals by creating a private right of action to remedy violations of the Act. *Id.* § 552a(g)(1).

So, unlike the AB 173 Amendments, the Federal Privacy Act does not rely alone on the questionable remedy of criminal penalties coupled with prosecutorial discretion. *Compare*, 5 U.S.C. § 552a with AB 173.  By contrast, the AB 173 Amendments instruct Defendant to disseminate Plaintiffs' Personal Information to third-party researchers and institutions.  Penal Code §§ 11106(d), 30352(b)(2). Those third parties are neither in the same position as government employees, nor are they subject to the government's authority in the way that an employee is. Moreover, there are no procedures for Plaintiffs to challenge the government's dissemination of their Personal Information, or the manner in which third parties use that information. *Cf.* 5 U.S.C. § 552a(d); *Northwestern*, 362 F.3d at 930–31 (discussing procedures for objecting to subpoena for protected medical records); *id.* at 935–36 (Manion, J., concurring, dissenting in part).  Further compounding that problem, Plaintiffs have no remedy against the third parties should their Personal Information be misused.  Plaintiffs are instead left to rely on a complicit government to enforce the very privacy rights it disputes even exist.

Defendant presumably will emphasize the measures that the Cal DOJ has implemented to keep Plaintiffs' Personal Information from being further disseminated.[44]  Those measures are insufficient.  The safeguards that Defendant cites are not enforceable by Plaintiffs, but rather only through criminal charges that

---

[44] *See* Def.'s TRO Opp'n [ECF No. 19] at 4:6–28.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   ultimately are left to the discretion of a government that admittedly does not believe

2   Plaintiffs have a privacy right in the information to begin with and is complicit in

3   the amassing and disclosure of the information.  Furthermore, unlike other laws,

4   those safeguards and procedures are not codified and could be changed at the whim

5   of the Attorney General in office.  *Cf., e.g.*, 5 U.S.C. § 552a; Cal. Civ. Code

6   §§ 1798.24 & 1798.25; Gov't Code §§ 6250, *et seq.*

7   Moreover, the presence of safeguards is not dispositive.  The risk of broader

8   public disclosure is but one of many important factors for the Court to consider.

9   *See Planned Parenthood*, 307 F.3d at 789-790; *Norman-Bloodsaw v. Lawrence*

10  *Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) (noting that a government

11  action can violate the right to privacy without disclosure to third parties); *Doe,* 941

12  F.2d at 796.  Thus, notwithstanding any safeguards, Defendant still must

13  demonstrate that the dissemination of Plaintiffs' Personal Information to third

14  parties is, in the first instance, "narrowly tailored to meet" the state's interest in

15  violence prevention.  *Thorne v. El Segundo*, 726 F.2d 459, 469 (9th Cir. 1983).

16

17  **B.    The AB 173 Amendments Violate Plaintiffs' Fourteenth Amendment**

18  **Rights by Impermissibly Chilling Plaintiffs' Exercise of their Second**

19  **Amendment Rights.**

20  The Supreme Court has "consistently refused to allow government to chill

21  the exercise of constitutional rights by requiring disclosure of protected, but

22  sometimes unpopular, activities." *Thornburgh v. American College of*

23  *Obstetricians and Gynecologists*, 476 U.S. 747, 767 (1965), *overruled in part on*

24  *other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *see*

25  *also Lamont v. Postmaster General*, 381 U.S. 301, 306–07 (1965) (invalidating

26  USPS requirement that addressee request delivery of "communist" materials in

27  order to receive them); *Talley v. California*, 362 U.S. 60, 64–65 (1960) (municipal

28  ban on unsigned handbills); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449,

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 27 -

462–65 (1958) (disclosure of NAACP membership list).  It does not matter whether the government's disclosure of private personal information is "an effort to suppress" the constitutional rights in question.  *NAACP*, 357 U.S. at 461.  Indeed, "[t]he governmental action may appear to be totally unrelated to protected liberties."  *Id.*  What matters is the "practical effect" of the compelled disclosure on the free exercise of constitutional rights.  Public disclosure is barred if it would suppress, curtail, discourage, dissuade, or otherwise deter the free exercise of protected liberties.  *Id.* at 461–63.

For example, in *Thornburgh*, the Court struck down a statute mandating the compilation of and permitting public access to personal identifying information of women who had had an abortion.  476 U.S. at 765 (quoting statute); *see also id.* at 766.  As the Supreme Court explained:

> Pennsylvania's reporting requirements raise the specter of public exposure and harassment of women who choose to exercise their personal, intensely private, right, with their physician, to end a pregnancy.  Thus, they pose an unacceptable danger of deterring the exercise of that right, and must be invalidated.

476 U.S. at 767–68 (citations omitted).

Information about citizens choosing to exercise a politically divisive, controversial or unpopular constitutional right "must be protected in a way that assures anonymity," because an individual may become "reluctant" to exercise her right "if there exists a possibility that her decision and identity will become known publicly."  *Id.* at 766–67.  "It is inherent in the right . . . that the right may be exercised without public scrutiny and in defiance of the contrary opinion of the sovereign or other third parties."  *Bellotti v. Baird*, 443 U.S. 622, 655 (1979) (Stevens, J., concurring).

Here, Plaintiffs provided their Personal Information to the Cal DOJ in the first instance only because they were required by law to do so as a condition to exercising their Second Amendment rights.  Prospectively, under the AB 173 Amendments, Plaintiffs must either agree to the disclosure of their Personal

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Information to third party researchers and potentially adversarial "nonprofit bona fide research institutions," or relinquish their constitutional right to purchase firearms and ammunition.  Worse yet, Plaintiffs have no remedy in the event these third parties improperly utilize their Personal Information.  In this manner, disclosure of Personal Information as provided under the AB 173 Amendments impermissibly discourage the exercise of fundamental constitutional rights.[45]

## C.   The AB 173 Amendments Directly Violate Plaintiffs' Second Amendment Rights.

The Second Amendment declares: "the right of the people to keep and bear arms shall not be infringed."  U.S. Const. amend. II.  That Amendment "guarantee[s] the individual right to possess and carry" arms and "elevates above all other interests the right of law-abiding responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).  Courts in the Ninth Circuit employ a two-prong test to evaluate the constitutionality of firearm regulations which "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny."  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) (citations omitted).

### 1.   The Core Second Amendment Right.

The text, history, and tradition of the Second Amendment protect the right to purchase firearms and ammunition.  *See Heller*, 554 U.S. at 616–19; *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017); *Bauer v. Becerra*, 858 F.3d 1216, 1222–23 (9th Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)  The fundamental right to possess firearms for protection necessarily implies a corresponding right to purchase firearms and ammunition—the core right

---

[45] *See* Jane Doe Decl. ¶ 14; Doe 1 Decl. ¶ 14; Doe 2 Decl. ¶ 14; Doe 3 Decl. ¶ 13.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

to possess firearms wouldn't mean anything without the ability to purchase firearms and ammunition in the first instance.

The laws amended by AB 173 burden Plaintiffs' Second Amendment rights because Plaintiffs were compelled to disclose their Personal Information as a condition on the exercise of those rights.  Furthermore, the AB 173 Amendments prospectively burden Plaintiffs' Second Amendment rights to purchase firearms and ammunition or to obtain a Carry License in the future.[46]

2.      Standards of Scrutiny.

"A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny," *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016).  Otherwise, courts apply intermediate scrutiny. *Chovan, supra*, 735 F.3d at 1138–39.

Under either standard, the government must show (1) the existence of a state interest, and (2) that the disclosure of Plaintiffs' Personal Information is tailored to achieve that interest.  The latter is of paramount importance in cases that involve a compelled disclosure, such as this case: "even a 'legitimate and substantial' government interest 'cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" *Ams. for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2384 (2021) (quoting *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)).

3.      The AB 173 Amendments Fail Either Level of Scrutiny.

The AB 173 Amendments fail any standard of scrutiny.  To meet even the lesser standard of intermediate scrutiny, Defendant must show that there is a "reasonable fit between the challenged law" and the government's "significant,

---

[46] *See* Jane Doe Decl. ¶ 14; Doe 1 Decl. ¶ 14; Doe 2 Decl. ¶ 14; Doe 3 Decl. ¶ 13.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

substantial, or important" statutory objective.  *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020).  That burden "is not satisfied by mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).  Rather, the government must bring forth "'substantial evidence' that the challenged restrictions will alleviate the harm." *McDougall v. Cnty. of Ventura*, No. 20-56220, slip op. at 37 (9th Cir. Jan. 20, 2022).

Here, Plaintiffs are law-abiding citizens who have passed multiple background checks.  Disseminating their Personal Information to third-party researchers and institutions—which includes the addresses and identifying features of lawful gun owners, law enforcement, court officers and their families—is not a reasonable fit to achieve the state's interest in preventing firearm violence because there is no conceivable relationship between Plaintiffs' Personal Information and alleviating that harm.  Furthermore, as discussed, the state's interest can be met without the wholesale disclosure of Personal Information.

**D.    The AB 173 Amendments Are Unconstitutionally Retroactive in Violation of Plaintiffs' Fourteenth Amendment Rights.**

The antiretroactivity principle finds expression in several provisions of the United States Constitution, including the Due Process Clause of the Fourteenth Amendment.  *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 266 (1994).  That Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const., Amend. XIV.  That right "protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Id.* (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)).  "[T]he presumption against retroactive legislation is deeply rooted in [the Supreme Court's] jurisprudence, and embodies a legal doctrine centuries older than

our Republic." *Landgraf*, 511 U.S. at 265 (footnotes omitted).  Fundamental considerations of fairness "dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.*   Statutory construction thus favors prospective application, absent clear legislative language to the contrary. *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982).

Before the AB 173 Amendments, Penal Code Sections 11106 and 30352 expressly limited disclosure of Plaintiffs' Personal Information to a restricted class of statutorily-defined governmental actors, and only for enumerated law-enforcement purposes such as assisting with criminal investigations, arrests and prosecutions.  *Compare* Penal Code §§ 11106(a)(2) & (c) (eff. Jan. 1, 2021 to Sept. 22, 2021), *with id.* §§ 11106(c)–(d) (eff. Sept. 23, 2021); *and compare id.* § 30352(b) (eff. Jan. 1, 2017), *with id.* § 30352(b) (eff. Sept. 23, 2021).

The AB 173 Amendments swept away the protections on which Plaintiffs relied when disclosing their constitutionally-protected Personal Information.  In doing so, the AB 173 Amendments attached new consequences (disclosure of private information to third parties) to conduct that took place before AB 173 was enacted.  Thus, applying the AB 173 Amendments retroactively to Plaintiffs (and their Personal Information *collected under prior law*) would be unlawful, without valid justification, and would constitute a deprivation of liberty without due process of law.  Retroactive application deprives Plaintiffs of any opportunity to conform their conduct to the new statute, nor can they request that the Cal DOJ not disseminate their Personal Information.  *Cf., e.g.*, *Martin v. Hadix*, 527 U.S. 343, 358–62 (1999) (new fee schedule could not constitutionally apply to work performed before its enactment); *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir. 2011) (amendment creating a civil cause of action could not apply to violations that occurred before effective date).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1

## V.

2

## <u>PLAINTIFFS WILL SUFFER IRREPARABLE HARM</u>

3         Plaintiffs here have "established a threatened and imminent irreparable harm

4   that cannot be adequately compensated at a later time," *Garrett v. City of*

5   *Escondido*, 465 F. Supp. 2d 1043, 1052 (S.D. Cal. 2006), so as to warrant

6   injunctive relief.  As the Ninth Circuit has held, "an alleged constitutional

7   infringement will often alone constitute irreparable harm."  *Associated General*

8   *Contractors v. Coalition For Economic Equity*, 950 F.2d 1401, 1412 (9th

9   Cir.1991); *see also Elrod v. Burns* 427 U.S. 347, 373 (1976) ("The loss of First

10  Amendment freedoms, for even minimal periods of time, unquestionably

11  constitutes irreparable injury."); *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014).

12         The thrust of Plaintiffs' claims is that the AB 173 Amendments to California

13  Penal Code sections 11106, 14231, and 30352 violate their constitutional rights in

14  four ways: (1) they violate Plaintiffs' substantive due process rights under the

15  Fourteenth Amendment against disclosure of personal matters; (2) they further

16  violate the Fourteenth Amendment by impermissibly chilling Plaintiffs' free

17  exercise of their Second Amendment rights; (3) they directly violate Plaintiffs'

18  Second Amendment rights and (4) they violate Plaintiffs' due process rights against

19  retroactive application of law.

20         To be clear, Plaintiffs contend that the dissemination of their Personal

21  Information to third-party public researchers is itself a violation of Plaintiffs' rights

22  to informational privacy and due process.  The Cal DOJ has already disseminated

23  Plaintiffs' Personal Information and, unless enjoined, will continue to disseminate

24  that information to additional third parties.  Each disclosure infringes Plaintiffs'

25  privacy rights and greatly increases the likelihood that sensitive information will be

26  disseminated to the broader public, exposing Plaintiffs to stigma, harassment, and

27  physical injury.[47]

28

[47] *See generally* Pls.' Decls. ¶¶ 5, 7, 12–13.

SNELL & WILMER

L.A.W. OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Additionally, the enforcement of the AB 173 Amendments forces law-abiding citizens to choose between exercising their Second Amendment rights and relinquishing their right to privacy in their confidential personal information.  Thus, as is the case here, "the injury which flows from the threat of enforcement of an allegedly unconstitutional . . . state statute . . . has been generally recognized as irreparable and sufficient to justify an injunction."  *Petroleum Expl. v. Pub. Serv. Comm'n of Kentucky*, 304 U.S. 209, 218–19 (1938).

## VI.

## AN INJUNCTION WILL SERVE THE PUBLIC INTEREST

The last two preliminary injunction elements merge when the government is the defendant.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted).  An injunction in this case will further the public interest.  "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the constitution."  *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Warren v. City of Chico*, No. 2:21-CV-00640-MCE-DMC, 2021 WL 2894648, at *1 (E.D. Cal. July 8, 2021) ("There is generally no public interest in the perpetuation of an unlawful government action.") (citation omitted).

The AB 173 Amendments implicate the Personal Information of millions of law-abiding California residents who have lawfully engaged in firearms transactions, including highly sensitive Personal Information.  Worse, Personal Information of individuals entitled to heightened protection has been made more vulnerable to disclosure (e.g., victims of domestic violence, public officials, judges and current and former law enforcement).[48]  *See, e.g.*, Cal. Gov't Code §§ 6205–

---

[48] *See, e.g.*, Emma Nolan, *The Rebecca Schaeffer Case and How it Changed Anti-Stalking Laws*, MEDIUM, Feb. 16, 2019 (last accessed Feb. 2, 2022), https://medium.com/@emmanolanwrite/the-rebecca-schaeffer-case-how-it-changed-anti-stalking-laws-4d8a8539c886.

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

6209, 6254.21(c).  Defendant has already disseminated Plaintiffs' Personal Information and will further disseminate that information to other third parties in the absence of an injunction.  And Plaintiffs have no legal remedy against those third-party recipients in the event of any subsequent unauthorized disclosure.

By contrast, Defendant cannot reasonably claim prejudice or hardship from the delay in implementation while these issues are heard.  Practically, the requested injunction would have minimal impact on the public—indeed it would protect much of the public's interest in maintaining the confidentiality of their records—whereas permitting the AB 173 Amendments to remain in effect as enacted will cause hardship and irreparable constitutional injury to millions of law-abiding California residents.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) (public interest factor requires consideration of non-parties).  Accordingly, the balance of the hardships tilts strongly in Plaintiffs' favor.

## VII.
## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that a preliminary injunction be entered (i) enjoining enforcement of the AB 173 Amendments until a decision on the merits, and (ii) enjoining any person or entity in active concert with Defendant through their receipt of Plaintiffs' Personal Information, including CFVRC and Stanford University, from using Plaintiffs' Personal Information for any purpose.  Plaintiffs further request such other and additional relief as the Court deems just and proper.

Dated: February 8, 2022

Respectfully submitted,

SNELL & WILMER L.L.P.

By: _____

Michael B Reynolds
Colin R. Higgins
Cameron J. Schlagel
Attorneys for Plaintiffs

4874-4908-4678

Notice of Motion and Motion for Preliminary Injunction            (22-cv-0010)