ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JOHN W. KILLEEN
Deputy Attorney General
RYAN R. DAVIS
Deputy Attorney General
State Bar No. 266330
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6050
  Fax: (916) 324-8835
  E-mail: Ryan.Davis@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE, et al.,**<br><br>                Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>                Defendants. | 3:22-cv-00010-LAB-DEB<br><br>**DEFENDANT'S OPPOSITION TO (1) PLAINTIFFS' APPLICATION FOR RECONSIDERATION OF ORDER DENYING TEMPORARY RESTRAINING ORDER AND (2) PLAINTIFFS' REQUEST TO REOPEN AND SUPPLEMENT PENDING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:  Hon. Larry A. Burns<br>Courtroom:  4A<br>Action Filed:  1/5/2022 |

# INTRODUCTION

Plaintiffs ask this Court to reconsider its Order Denying Plaintiffs' Application for a Temporary Restraining Order (ECF No. 22) or, in the alternative, to reopen and supplement the record in support of Plaintiffs' pending Motion for Preliminary Injunction (ECF No. 26). They do so with reference to a June 27, 2022 incident at the California Department of Justice (DOJ or the Department) involving the exposure of personal identifying information (PII) through DOJ's Firearms Dashboard Portal.

The June 27 incident was serious, and the Attorney General has brought in outside counsel and an outside forensic cyber expert to conduct an independent review, and will take strong corrective measures. But this incident was entirely unrelated to California Assembly Bill 173 (2021-2022 Reg. Sess.) (AB 173). The incident involved a public-facing platform that has nothing to do with sharing gun-violence data with qualified researchers for law enforcement purposes, as authorized by AB 173. As the undisputed evidence has demonstrated throughout this case, DOJ has for decades shared information with researchers from the University of California, Stanford University, and other institutions, and those researchers have safeguarded PII using the best available methods. Those facts have not changed since the Court denied Plaintiffs' request for a temporary restraining order (TRO), and Plaintiffs are just as unlikely now to prevail on the merits of their facial challenge to AB 173.

Were the Court to revisit its order denying a TRO, the balance of the equities also continues to tip in favor of maintaining the status quo by denying the TRO, rather than disrupting the status quo by granting it. As explained by Dr. Wintemute of UC Davis, Dr. Studdert of Stanford, and Dr. Webster of Johns Hopkins, cutting the flow of information to gun-violence researchers would disrupt vital studies that are even more important now, when the nation is grappling with how to respond to a series of recent mass shootings. Moreover, there continues to be no evidence that

1

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

data shared with researchers as part of this specific program was shared by the researchers with the public, or that Plaintiffs are otherwise being harmed by the sharing of data with researchers. Plaintiffs speculate that the exposure of certain PII via DOJ's Firearms Dashboard Portal necessarily means that outside researchers in possession of PII separately received from DOJ—researchers who hold that PII in systems that are entirely separate from DOJ's systems—will disclose information in their possession to the public. Plaintiffs have no evidence to back up this speculation and indeed there is none.

Accordingly, Plaintiffs' requests should be denied.

## BACKGROUND

In 2016, California established a Firearm Violence Research Center at the University of California. Several state agencies, including DOJ, were required to provide the Research Center with information in their records. In 2021, the Legislature enacted AB 173 to clarify the 2016 information-sharing requirement and how the Department may provide information to other researchers. 2021 Cal. Stat., ch. 253. A group of anonymous Plaintiffs brought this suit to stop DOJ from providing information that will facilitate important research into firearm violence.

On January 10, 2022, 78 days after AB 173 went into effect, Plaintiffs filed their *Ex Parte* Application for Temporary Restraining Order (ECF No. 9). On January 20, 2022, following briefing and a hearing, this Court denied Plaintiffs' application because there was no pending emergency and no irreparable harm likely to occur over the course of 14 days. Order at 3-4, ECF No. 22. On February 8, 2022, Plaintiffs filed their Motion for Preliminary Injunction (ECF No. 26), which is now fully briefed and pending the Court's decision.

On June 27, 2022, DOJ learned that certain PII was disclosed in connection with the June 27 release of DOJ's Firearms Dashboard Portal, which resides on DOJ's public-facing OpenJustice platform. After DOJ learned of the data exposure, DOJ removed the information from public view and shut down the Firearms

2

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

Dashboard Portal. DOJ has brought in outside counsel and an outside forensic cyber expert to conduct an independent review, and will take strong corrective measures where necessary. The facts relevant to data provided to researchers pursuant to AB 173, however, remain unchanged and the June 27 incident bears no relevance to Plaintiffs' application.

## ARGUMENT

Plaintiffs present an extensive discussion of representations that Defendant, through counsel, previously made to this Court. *Ex Parte* Application at 11-16, ECF No. 49. Defendant stands by all of those representations and the June 27 incident does not change the relevant facts.[1] It is still true that (1) with limited exceptions, the law prohibits the disclosure of PII; (2) AB 173 requires researchers receiving data to maintain robust security measures to prevent inappropriate and unlawful disclosures; and (3) none of the researchers receiving data from DOJ have ever disclosed or suffered an incident leading to the disclosure of PII. Accordingly, and because the June 27 incident had nothing to do with the security of information held by researchers in accordance with AB 173, the reasons this Court previously articulated for denying Plaintiffs' request for a TRO still apply. For the same reasons, there is also no basis for this Court to reopen the record for the preliminary injunction motion.

### I. NOTHING HAS CHANGED WITH RESPECT TO AB 173, AND THERE IS NO REASON FOR THE COURT TO RECONSIDER ITS ORDER DENYING PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER

The relevant law and facts have not changed since the Court denied Plaintiffs' request for a TRO. First, California's Information Practices Act (IPA) requires all state agencies to "establish appropriate and reasonable administrative, technical, and physical safeguards . . . to ensure the security and confidentiality of records"

---

[1] The Court should disregard Plaintiffs' conspiracy theory that DOJ's prior counsel had any connection to the June 27 incident. ECF No. 50. DOJ's prior counsel had long ago planned to leave DOJ at this time, and his departure has no relation to the June 27 incident. Decl. of Nelson Richards, attached hereto, ¶¶ 2-8.

3

(Cal. Civ. Code § 1798.21) and generally prohibits the disclosure of "any personal information in a manner that would link the information disclosed to the individual to whom it pertains . . . ." *Id.* § 1798.24. To ensure compliance, the IPA authorizes individuals to bring civil actions against agencies that fail to comply with its provisions "in such a way as to have an adverse effect on an individual." *Id.* § 1798.45(c). In any such suit, the agency "shall be liable to the individual" in an amount equal to the sum of "actual damages sustained by the individual, including damages for mental suffering," as well as costs and reasonable attorneys' fees. *Id.* § 1798.48. More specifically, regarding information disclosed pursuant to AB 173, Penal Code section 11106, subdivision (d), provides that "[m]aterial identifying individuals shall only be provided for research or statistical activities and shall not be transferred, revealed, or used for purposes other than research or statistical activities, and reports or publications derived therefrom shall not identify specific individuals." *See also* Cal. Pen. Code § 30352, subdivision (d) (providing the same regarding information obtained from ammunition vendors).

In accordance with AB 173, DOJ follows three steps before PII can be disclosed to researchers. First, as previously explained in the opposition to the pending motion for a preliminary injunction, researchers requesting information are required to apply, provide proof of identity, and submit to a background check. Decl. of Trent Simmons ISO Def.'s Opp'n to Pls.' Mot. for Prelim Inj. (Simmons Decl.) ¶¶ 6-7, 8, 12;[2] see also Decl. of Randie Chance, attached hereto (Chance Decl.) ¶¶ 2-3. Applicants are required to provide documentation showing that they have data security protocols in place and that they comply with the security measures outlined in the Federal Bureau of Investigation Criminal Justice Information Services Security Policy. Simmons Decl. ¶ 9. Second, DOJ reviews the documentation of the applicant's compliance with information security

---

[2] Except as otherwise indicated, the declarations and expert report cited herein are attached to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction filed on February 22, 2022 (ECF No. 29).

4

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

requirements. Decl. of Sonny Mangat ISO Def.'s Opp'n to Pls.' Mot. for Prelim Inj., ¶¶ 5-7. Third, after research has concluded, applicants must submit pre-publication manuscripts of their research to DOJ for review to ensure that the publication does include PII. Simmons Decl. ¶ 14.

As also previously explained, the researchers who have been granted access to information from DOJ, including before AB 173 passed or took effect, comply with strict protocols that "[a]s a practical matter," provide "security . . . comparable to or greater than that provided for protected health information used in medical research or clinical care." Decl. of Prof. Garen J. Wintemute (Wintemute Decl.) ¶ 34; *see also* Decl. of Prof. David M. Studdert (Studdert Decl.) ¶ 21 (noting that researchers at Stanford University employ strict procedures "modeled on those applied to clinical studies that involve storage and analysis of individual-level private health information"); Expert Witness Report of Prof. Daniel Webster ¶¶ 24-25. To Professor Wintemute's knowledge, "there has never been a data breach where information received [by the California Firearm Violence Research Center] from the California Department of Justice was stolen or publicly disclosed." Wintemute Decl. ¶ 40. Professor Studdert reports that in his "25 years of conducing empirical research with dozens of data," he has never had a security breach. Studdert Decl. ¶¶ 22-23.

All of the above remains true despite the June 27 incident, which again, had nothing whatsoever to do with the implementation of AB 173 or use of data supplied thereunder to researchers. Thus, it remains as true today as it was in January that with respect to data that DOJ provides to researchers in accordance with AB 173, "[t]here is no emergency here" and that "no irreparable harm is likely to occur in the next fourteen days." Order Denying Plaintiffs' Application for a Temporary Restraining Order at 3-4, ECF No. 22. It is still true that "recipients are barred from public dissemination of personal information, and must submit any research based on the data to DOJ for pre-publication review to ensure that the

5

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

1 | manuscripts don't contain any information identifying specific individuals." *Id.* at
2 | 4; Chance Decl. ¶ 3. In short, the reasons on which this Court based its previous
3 | order denying a TRO still apply.
4 |     In attempting to argue otherwise, Plaintiffs fail to support the notion that the
5 | June 27 incident somehow weighs in favor of Plaintiffs' facial challenge to AB 173.
6 | Instead, the thrust of Plaintiffs' argument is that an injunction is needed because
7 | without one, "there is nothing to stop Defendant from once again disclosing
8 | Plaintiff's [PII] to the public or third parties." *Id.* at 21.
9 |     The fundamental problem with this argument is that the June 27 incident
10 | simply has nothing to do with AB 173. Plaintiffs make no allegation that any
11 | researchers receiving data under AB 173 had any involvement in the June 27
12 | incident. There is a clear disconnect between the June 27 incident and the present
13 | litigation. In fact, in their previous request for a TRO, filed on January 10, 2022,
14 | Plaintiffs only requested an order "enjoining enforcement and rendering AB 173
15 | Amendments without effect . . . ." *Ex Parte* Application for Temporary
16 | Restraining Order at 36, ECF No. 9. Although they say they only want this Court
17 | to reconsider its prior order, Plaintiffs now ask for much more: not only an order
18 | enjoining enforcement of AB 173, but *also* an order "prohibiting any further public
19 | disclosure of Personal Information by Cal DOJ, or those acting in concert with it, to
20 | third parties or the public . . . ." *Id.* at 24. Here, Plaintiffs appear to recognize that
21 | an order that only addresses DOJ's ability to share data with researchers in
22 | accordance with AB 173 would have no impact on information that DOJ would
23 | possess even if AB 173 did not exist.
24 |     An injunction limited to AB 173 *would*, however, have the effect of inhibiting
25 | critical research needed to answer important questions about firearm-related crime,
26 | suicide, and accidents. *See, e.g.* Wintemute Decl. ¶¶ 8-18. For this reason, too, this
27 | Court should reject Plaintiffs' request to reconsider its prior order.
28 |

6

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

## II. THERE IS NO REASON FOR THE COURT TO CONSIDER THE JUNE 27 INCIDENT AS "NEWLY DISCOVERED EVIDENCE" OR TO OTHERWISE REOPEN AND SUPPLEMENT THE RECORD

For the above reasons, too, the June 27 incident is not "newly discovered evidence" and thus does not provide any grounds to reopen and supplement the record of the Court's prior denial of a preliminary injunction. Plaintiffs do not even suggest that anything has changed with respect to the security of the data held by researchers in accordance with AB 173. Under these circumstances, there are no grounds for reopening and supplementing the record.

Other than the data incident, the only additional basis for Plaintiffs' request to reopen and supplement the record is from *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021) (*American for Prosperity*), which was a challenge to requirements to *provide information to DOJ*, in which the district court took evidence at trial regarding disclosures of information by DOJ. The case is inapposite. Plaintiffs do not challenge any requirement that information be provided to DOJ. And with respect to information that is provided to researchers, as already noted above, to Professor Wintemute's knowledge, "there has never been a data breach where information received [by the California Firearm Violence Research Center] from the California Department of Justice was stolen or publicly disclosed." Wintemute Decl. ¶ 40. And Professor Studdert reports that in his "25 years of conducting empirical research with dozens of data," he has never had a security breach. Studdert Decl. ¶¶ 22-23. Of course, *Americans for Prosperity* also is not new—it was decided before Plaintiffs filed their motion for a preliminary injunction—and so does not amount to "newly discovered evidence" or otherwise provide a reason to reopen and supplement the record.

///
///
///

7

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)

# CONCLUSION

This Court should reject Plaintiffs' request that this Court reconsider its prior order denying the request for a TRO, and Plaintiffs' alternative request to reopen and supplement the record in support of Plaintiffs' pending Motion for Preliminary Injunction (ECF No. 26).

Dated: July 13, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
JOHN W. KILLEN
Deputy Attorney General

**/s/ *Ryan R. Davis***
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

8

Def.'s Opp'n to Pls.' Appl. For Reconsideration (3:22-cv-00010-LAB-DEB)