ROB BONTA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General
RYAN DAVIS
Deputy Attorney General
State Bar No. 266330
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6050
  Fax: (916) 324-8835
  E-mail: Ryan.Davis@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE, et al.** | 3:22-cv-00010-LAB-DEB |
| Plaintiffs, | |
| v. | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING SUPPLEMENTAL AUTHORITY** |
| **ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-25, inclusive,** | |
| Defendants. | Judge: Hon. Larry A. Burns<br>Courtroom: 4A<br>Action Filed: 1/5/2022 |

**TABLE OF CONTENTS**

                                                                                            **Page**

Introduction ............................................................................................................ 1
Argument ............................................................................................................... 2
      I.     Legal Standards Articulated in *Bruen* ............................................... 2
      II.    Based on the Legal Standards Articulated in *Bruen*, Defendant's Motion to Dismiss Should Be Granted .................................................. 6
      III.   Plaintiffs' Motion for a Preliminary Injunction Should Be Denied ................................................................................................ 10
Conclusion ........................................................................................................... 13

i

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017) .................................................................................... 7

*Bellotti v. Baird*
    443 U.S. 622 (1979) ................................................................................................. 10

*Burdick v. Takushi*
    504 U.S. 428 (1992) ................................................................................................... 8

*Clark v. Cmty. for Creative Non-Violence*
    468 U.S. 288 (1984) ................................................................................................... 8

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ..................................................................................... 2, 4, 7, 9

*Dobbs v. Jackson Women's Health Org.*
    142 S. Ct. 2228 (2022) ............................................................................................. 11

*Jackson v. City & Cty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014) ............................................................................ 2, 3, 7

*Jones v. Bonta*
    34 F.4th 704 (9th Cir. 2022) ...................................................................................... 7

*Kennedy v. Bremerton Sch. Dist.*
    142 S. Ct. 2407 (2021) ............................................................................................... 8

*Lamont v. Postmaster General*
    381 U.S. 301 (1965) ................................................................................................. 10

*McDonald v. City of Chicago*
    561 U.S. 742 (2010) .......................................................................................... 2, 4, 7

*New York State Rifle & Pistol Association v. Bruen*
    142 S. Ct. 2111 (June 23, 2022) ....................................................................... *passim*

*Ramos v. Wolf*
    974 F.3d 87 (9th Cir. 2020) ..................................................................................... 11

ii

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Teixeira v. Cty. of Alameda*
   873 F.3d 670 (9th Cir. 2017) .................................................................................. 8

*Trump v. Int'l Refugee Assistance Project*
   137 S. Ct. 2080 (2017) ......................................................................................... 12

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013) ................................................................................ 3

*Winter v. Natural Resources Def. Council, Inc.*
   555 U.S. 7 (2008) ................................................................................................. 12

*Zablocki v. Redhail*
   434 U.S. 374 (1978) ............................................................................................... 8

**STATUTES**

California Penal Code
   § 11106(d) ............................................................................................................. 1
   § 14230(c) ............................................................................................................. 1
   § 30352(b)(2) ........................................................................................................ 1

United States Privacy Act of 1974 ............................................................................ 1

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ............................................................................................ 8, 10
   Second Amendment ................................................................................... *passim*
   Fourteenth Amendment ................................................................................. 1, 10
   Due Process Clause .............................................................................................. 1

**OTHER AUTHORITIES**

California State Assembly Bill
   173 (2021-2022 Reg. Sess., 2021 Cal. Stat., ch. 253) ............................................ 1

iii

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

## INTRODUCTION

Assembly Bill 173 (2021-2022 Reg. Sess., 2021 Cal. Stat., ch. 253) (AB 173) requires the Department of Justice (Department) to provide the Firearm Violence Research Center (FVRC) at UC Davis with information on firearms purchases and ownership, including personal identifying information, which enables the FVRC to "conduct basic, translational, and transformative research with a mission to provide the scientific evidence on which sound firearm violence prevention policies and programs can be based." Cal. Pen. Code §§ 14230(c).[1] AB 173 also permits the Department to provide the same information to other researchers at accredited institutions "for the study of the prevention of violence." § 11106(d); § 30352(b)(2). In the First Amended Complaint, Plaintiffs allege that AB 173 (1) violates their right to privacy under the Due Process Clause of the Fourteenth Amendment; (2) violates their right to keep and bear arms under the Second Amendment; (3) has unconstitutional retroactive application in violation of the Due Process Clause of the Fourteenth Amendment; and (4) is preempted by a provision of the Privacy Act of 1974. ECF No. 28 at 31-45. Plaintiffs seek a preliminary injunction to enjoin enforcement of AB 173, ECF No. 26, and Defendant has moved to dismiss on the basis that all four of Plaintiffs' claims fail as a matter of law, ECF No. 36.

In *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (June 23, 2022), the Supreme Court announced a new framework for analyzing Second Amendment claims. In lieu of the "two-step test" that this Court and most other federal courts of appeals had adopted for resolving those claims, *Bruen* held that courts must apply a standard "rooted in the Second Amendment's text, as informed by history," *id.* at 2127. The Court also provided important guidance about how that test should be applied. *See id.* at 2131-2134.

---

[1] All further undesignated statutory references are to the California Penal Code.

1

Given the potential relevance to Plaintiffs' second cause of action, this Court ordered the parties to provide supplemental briefing addressing the legal standard the Court must apply to Plaintiffs' Second Amendment claim and how it applies to the motions now pending before the Court. ECF No. 47. These issues are addressed below. The upshot is that, because *Bruen* supports Defendant's argument that AB 173 does not burden anyone's Second Amendment rights, the Court should reach the same result after *Bruen* as it would have before *Bruen*: Defendant's motion to dismiss should be granted, and Plaintiffs' motion for a preliminary injunction should be denied.

## ARGUMENT

### I.   LEGAL STANDARDS ARTICULATED IN *BRUEN*

In *Bruen*, the Supreme Court "decline[d] to adopt" the "'two-step' framework" for analyzing Second Amendment claims that the Ninth Circuit and most other federal courts of appeals had "coalesced around" after the Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Bruen*, 142 S. Ct. at 2125-2126. The first step under that approach required courts to discern the "historical scope of the Second Amendment" by asking whether the regulation was "one of the 'presumptively lawful regulatory measures' identified in" the Supreme Court's decision in *Heller*, 554 U.S. 570, or "whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

If the law fell within the scope of the Second Amendment, courts proceeded to the second step of the inquiry, in which they determined the appropriate level of scrutiny by evaluating "(1) how close the law c[ame] to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Jackson*, 746 F.3d at 960-961 (quotation marks omitted). If the law severely burdened the

2

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

"core" Second Amendment right of "law-abiding, responsible citizens to use arms in defense of hearth and home," then strict scrutiny applied. *Id.* at 961 (quotation marks omitted). For all other cases, intermediate scrutiny applied, which meant the government needed to show that its law served a "significant, substantial, or important" interest, and that there was a "reasonable fit between the challenged regulation and the asserted objective." *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013).

In rejecting the two-step framework, the Supreme Court directed courts to scrutinize Second Amendment claims by applying a "methodology centered on constitutional text and history." *Bruen*, 142 S. Ct. at 2128-2129. Under the new approach, courts must initially assess whether the "Second Amendment's plain text covers" the regulated conduct. *Id.* at 2129. If the answer is no, there is no violation of the Second Amendment. If the answer is yes, the government can still justify its regulation—and overcome a constitutional challenge—not by showing that the law overcomes intermediate scrutiny but by showing that the challenged law is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

In some cases, *Bruen* provides that this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132. Governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." *Id.* at 2333 (emphasis omitted). And while the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it did identify "two metrics: how and why the regulations burden a law-abiding citizen's right to

3

armed self-defense." *Id.* Under *Bruen*, a modern regulation is consistent with the Second Amendment if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.*; *see also id.* (modern-day regulation need not be a "dead ringer" for historical precursors or a "historical *twin*" to "pass constitutional muster").

While *Bruen* announced a new rubric for analyzing Second Amendment claims, it also made clear that governments may continue to adopt reasonable gun safety regulations. The Court recognized that the Second Amendment is not a "regulatory straightjacket." *Id.* at 2133. Nor is it a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Id.* at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636). And he emphasized that that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws "forbidding the carrying of firearms in sensitive places," laws "imposing conditions and qualifications on the commercial sale of arms," and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[2]

---

[2] *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *accord McDonald*, 561 U.S. at 785 (the Second Amendment "by no means eliminates" state and local governments' "ability to devise solutions to social problems that suit local needs and values").

4

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

In *Bruen*, the Court applied the text-and-history standard to New York's "proper cause" requirement for obtaining a license to carry a handgun in public, and held that the requirement lacked a sufficient historical analogue to demonstrate that its prohibition on most law-abiding citizens from obtaining licenses to carry handguns in public for self-defense is consistent with the Second Amendment. 142 S. Ct. at 2156. New York law required all applicants for a license to demonstrate that "proper cause" exists for the licensing authority to issue the license, with proper cause being defined as a showing of "special need for self-protection distinguishable from that of the general community." *Id.* This was a "demanding" standard, *id.* at 2123, and made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," *id.* at 2156 (Alito, J., concurring).

At the threshold stage of the inquiry, the Court held that the regulated conduct is covered by the "plain text" of the Second Amendment. No party disputed that the "ordinary, law-abiding, adult citizens" who were plaintiffs in the case were "part of 'the people' whom the Second Amendment protects." *Id.* at 2134. And no party disputed that the handguns that the plaintiffs sought to carry in public qualified as protected "Arms" because handguns are "'in common use' today for self-defense." *Id.* (citing *Heller*, 554 U.S. at 627, *and Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016)). The only textual question remaining for the Court to resolve was whether the plaintiffs' "proposed course of conduct—carrying handguns publicly for self-defense"—fell within the term "keep" or "bear." *Id.* The Court had "little difficulty" concluding that the term "bear," as used in the Second Amendment, "naturally encompasses public carry" of firearms for self-defense—individuals who "keep" arms in the home for self-defense do not also "bear" those weapons when inside the home. *Id.* The Court reasoned that because "self-defense is 'the *central component* of the [Second Amendment right itself," it would make "little sense" to confine that right to the home. *Id.* at 2135.

5

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

Because the plain text of the Second Amendment covered Plaintiffs' proposed course of conduct, the Constitution "presumptively" protected that conduct, and the burden then shifted to the government to show that the prohibition was consistent with an accepted tradition of firearm regulation and thus did not infringe on the Second Amendment right as originally understood. *Bruen*, 142 S. Ct. at 2135. The Court characterized the societal problem addressed by New York's law as "'handgun violence, primarily in 'urban area[s]'" and considered whether "'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Bruen*, 142 S. Ct. at 2131-32. The Court examined the government's historical evidence and did not find sufficient evidence of a tradition of prohibiting the carrying of firearms in public for armed self-defense—imposing comparable burdens on the right to armed self-defense and supported by comparable justifications—to demonstrate the constitutionality of New York's proper-cause requirement.

## II. BASED ON THE LEGAL STANDARDS ARTICULATED IN *BRUEN*, DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED

The Supreme Court's decision in *Bruen*, with its emphasis on the *plain text* of the Second Amendment, only supports Defendant's argument that Plaintiffs' second claim should be dismissed. As noted above, under the new approach laid out in *Bruen*, courts must first assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at 2126—in other words, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms," U.S. Const. amend. II. The "People" who have the right to keep and bear arms are "law-abiding, adult citizens." *See Bruen*, 142 S. Ct. at 2134. The Attorney General has no reason to dispute that the individual Plaintiffs are part of "the People." But Plaintiffs cannot bear their burden of showing that AB 173 does anything to prevent anyone from keeping or bearing arms of any sort.

6

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

The conclusion that plaintiffs' challenge fails as a textual matter is consistent with both the Court's Second Amendment precedents and the way it analyzes other constitutional rights. *Heller* and *McDonald* invalidated unusually "severe" restrictions that "totally ban[ned] handgun possession in the home." *Heller*, 554 U.S. at 628-629; *see also McDonald*, 561 U.S. at 750-751. Those laws "amount[ed] to a destruction of the Second Amendment right" to "keep" firearms for "the core lawful purpose of self-defense" by "law-abiding, responsible citizens." *Jackson*, 746 F.3d at 961 (quoting *Heller*, 554 U.S. at 629, 635). Similarly, the "proper cause" requirement challenged in *Bruen* made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," 142 S. Ct. at 2156 (Alito, J., concurring), and therefore effectively "nullif[ied] half of the Second Amendment's operative protections"—*i.e.*, the right to "bear" arms, *id.* at 2135. Contrary to the law challenged in *Bruen*, which effectively operated as a prior restraint on the ability of most law-abiding citizens to "bear" "arms" outside the home, AB 173 only concerns data provided to firearms violence researchers under strict confidentiality protocols. *Cf. Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (a $19 fee on firearms transfers does not "ha[ve] any impact on the plaintiffs' actual ability to obtain and possess a firearm"); *see also Jones v. Bonta*, 34 F.4th 704, 724 (9th Cir. 2022) (requiring that young adults ages 18-20 secure a hunting license before they can acquire some firearms from dealers "does not impose a significant burden on the Second Amendment right to keep and bear arms").

Moreover, requiring plaintiffs to demonstrate that a challenged regulation burdens conduct protected by the "plain text" of the Second Amendment accords with how the Supreme Court "protect[s] other constitutional rights." *Bruen*, 142 S. Ct. at 2130. When scrutinizing free exercise claims, the Court first asks whether the plaintiff has shown that the government "has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"

7

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-2422 (2021). Plaintiffs who assert free speech claims are "oblig[ed]" to "demonstrate that the First Amendment even applies" to the "assertedly expressive conduct" in which they wish to engage. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). And in assessing whether an election law burdens the right to vote, the Court first asks whether the regulation imposes a "'severe'" burden on that right or only a "'reasonable, nondiscriminatory restriction[]'" to determine the appropriate level of scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Zablocki v. Redhail*, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.").

The same mode of analysis applies in the Second Amendment context. *Bruen*'s repeated instruction that the Constitution "presumptively protects" conduct covered by the "Second Amendment's plain text." 142 S. Ct. at 2129-2130; *id.* at 2126, 2134, 2135. And any other rule would require governments to justify any regulation that makes it even *marginally* harder to acquire a firearm by reference to "this Nation's historical tradition of firearm regulation." *Id.* at 2126. It would mean, for example, that a government could only justify a zoning regulation prohibiting the sale of firearms near schools, day-care centers, and liquor stores by demonstrating that there is a "well-established and representative historical analogue" to those requirements. *Bruen*, 142 S. Ct. at 2133 (emphasis omitted); *cf. Teixeira v. Cty. of Alameda*, 873 F.3d 670, 673 (9th Cir. 2017) (en banc) (upholding a zoning regulation governing the sale of firearms because the plaintiff had not "plausibly alleged" that the ordinance "impede[d] any resident of Alameda County who wishes to purchase a firearm from doing so").

Defendant previously argued that AB 173 imposes, at most, "a de minimis burden" on the right to keep and bear arms. ECF No. 36 at 19 (quoting *Heller v. Dist. of Columbia* (D.C. Cir. 2011) 670 F.3d 1244, 1254-1255 (*Heller II*). Indeed,

8

AB 173 imposes *no* burden on the right to keep and bear arms. Stated differently, the Second Amendment's plain text does not "cover[]" the collection or sharing of information permitted by AB 173. *See Bruen*, 142 S. Ct. at 2126. At most, AB 173 imposes a "condition[] and qualification[] on the commercial sale of arms," and is therefore among those "presumptively lawful regulatory measures" that governments may adopt consistent with the Second Amendment. *Heller*, 554 U.S. at 626-627, 627 n.26; *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting this part of *Heller*). Accordingly, there is no need for historical analysis. Plaintiffs' claim fails at the threshold stage of the inquiry.

Even if the Court were to conclude that the text of the Second Amendment covers the sharing of information on firearm purchases and ownership with researchers, California can still defend AB 173 by showing that it is "consistent with the Nation's historical tradition of firearm regulation"—specifically that the law imposes a "comparable burden on the right of armed self-defense" to the relevant historical analogues and is "comparably justified." *Bruen*, 142 S. Ct. at 2133. Although Defendant previously argued that AB 173 is consistent with longstanding laws, and is thus consistent with historical tradition, *see* ECF No. 36 at 20-21, *Bruen* has since provided important guidance about how this historical inquiry should proceed. For example, to obtain a final judgment in Defendant's favor, assuming the Court disagrees with Defendant's textual arguments, the Attorney General will need to show that AB 173 is "'relevantly similar'" to the relevant historical analogue by showing that it imposes a "comparable burden on the right of armed self-defense" to that historical predecessor and is "comparably justified." *Bruen*, 142 S. Ct. at 2133. And that analysis will need to take account of the fact that when addressing the validating of laws addressing "unprecedented societal concerns or dramatic technological changes," a "more nuanced approach" is required. *Bruen*, 142 S. Ct. at 2132. Indeed, as *Bruen* recognizes, "'applying constitutional principles to novel modern conditions can be difficult and leave close

9

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

questions at the margins.'" *Id.* at 2134 (quoting *Heller II*, 670 U.S. at 1275 (Kavanaugh, J., dissenting)). In addition, *Bruen* left open other questions, including "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791. *Id.* at 2138; *see also id.* at 2162-2163 (Barrett, J., concurring) (highlighting "two methodological points that the Court does not resolve," including the "manner and circumstances in which postratification practice may bear on the original meaning of the Constitution"). Accordingly, in light of *Bruen* and its in-depth discussion of how historical analysis should proceed in this context, further research and briefing may well be needed—but again, only if the Court concludes that the plain text of the Second Amendment covers the gathering and use of the information at issue.[3]

### III. PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

For similar reasons, the Supreme Court's decision in *Bruen* does not support Plaintiffs' motion for a preliminary injunction. Plaintiffs contend that they are likely to prevail on their Second Amendment claim because AB 173 has an impermissible chilling effect on the exercise of their Second Amendment rights and because AB 173 more "directly" violates their Second Amendment rights. ECF No. 26 at 29-31. Neither of these arguments has merit.

As Defendant previously explained, Plaintiffs fail to cite any applicable authority to support their chilling theory. ECF No. 29 at 21-22. The cases that Plaintiffs cite only address the First Amendment (*Lamont v. Postmaster General*, 381 U.S. 301 (1965)), and the right to abortion (*Bellotti v. Baird*, 443 U.S. 622

---

[3] The additional argument presented by Defendant in the alternative—that intermediate scrutiny is the highest level of scrutiny that would apply and that AB 173 would easily overcome it—is no longer apt in light of *Bruen*. *See* ECF No. 37 at 21-23.

10

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

(1979), since abrogated by *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)). Indeed, Plaintiffs abandon this theory in their reply brief. *See* ECF No. 32. That *Bruen* did not mention this theory when detailing how courts should approach Second Amendment claims further supports Defendant's argument that no chilling doctrine applies to the Second Amendment.

Plaintiffs' argument that AB 173 more directly violates their rights to keep and bear arms should be rejected because, again, AB 173 does not implicate the Second Amendment at all. As *Bruen* holds, the focus in determining that threshold question is the *plain text* of the Second Amendment, which only refers to restrictions on the ability to "keep" or "bear" arms. As explained above, Plaintiffs cannot make the threshold showing that AB 173 regulates conduct covered by the "plain text" of the terms of the Second Amendment. The Second Amendment does not cover the sharing of information with researchers for the purpose of studying gun violence and policies to address it. *See ante* Argument II.

As also noted above, however, even if the Court disagrees with Defendant's textual argument, California can still defend its law by showing that AB 173 is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2133. As discussed above, however, *Bruen* has dramatically changed the way in which lower courts should proceed with the historical analysis. *See ante* Argument I. And although it would ultimately be Defendant's burden to put forth the relevant historical evidence to prevail at final judgment, *see Bruen*, 142 S. Ct. at 2135, it is still Plaintiffs' burden at *this* stage of the preliminary injunction analysis to show that they are likely to prevail on the merits. S*ee, e.g.*, *Ramos v. Wolf*, 974 F.3d 87, 899 (9th Cir. 2020). Especially because *Bruen* was so recently decided, and because *Bruen* announced a new framework for approaching Second Amendment claims—and provided guidance as to how the historical analysis, when necessary, should proceed—Plaintiffs cannot possibly show (and certainly have not

11

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

shown) that they are entitled to the "extraordinary remedy" of a preliminary injunction. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Moreover, even apart from the supposed merit of Plaintiffs' claim, *Bruen* does not bear on the balance of harms, which tip sharply in favor of denying a preliminary injunction. As Defendant previously described, an injunction would interfere with important ongoing research and would undermine efforts to answer important and pressing questions about firearm violence, its causes, and how to prevent it. ECF No. 29 at 24-25. Here, the state of the law remains in flux; and if this Court disagrees with Defendant's textual arguments, it will need to engage in the "difficult" tasks of "resolving threshold" historical questions and "making nuanced judgments about which evidence to consult and how to interpret it." *Bruen*, 142 S. Ct. at 2130 (quoting *McDonald*, 561 U.S. at 803-804 (Scalia, J., concurring)). It will also need to answer questions that *Bruen* left open, including what the relevant time period is for analyzing the history of the Second Amendment, and the "manner and circumstances in which postratification practice may bear on the original meaning of the Constitution." *Bruen*, 142 S. Ct. at 2162-2163 (Barrett, J., concurring). And because the decision to grant a preliminary injunction "often depend[s] as much on the equities of a given case as the substance of the legal issues it presents," *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017), this Court should not enjoin enforcement of a law that significantly advances "the overall public interest," *id.*, without having the benefit of a full historical record or briefing on how to handle these and other "difficult" historical questions, *Bruen*, 142 S. Ct. at 2131.

/ / /
/ /
/ / /
/ / /
/ / /

12

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

# CONCLUSION

For the reasons stated in Defendants' briefing and in accordance with *Bruen*, this Court should grant Defendant's motion to dismiss and deny Plaintiffs' motion for a preliminary injunction.

Dated: July 25, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General

*/s/ Ryan Davis*
RYAN DAVIS
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

SA2022300119
36388449

13

Def.'s Memorandum re: Supp. Authority (3:22-cv-00010-AJB-DEB)

## CERTIFICATE OF SERVICE

Case Name:  **Doe, Jane, et al. v. Rob Bonta**      No.   **3:22-cv-00010-AJB-DEB**

I hereby certify that on July 25, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING SUPPLEMENTAL AUTHORITY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 25, 2022, at Sacramento, California.

Eileen A. Ennis
Declarant

*Eileen A. Ennis*
Signature

SA2022300119
36389218.docx