Michael B. Reynolds, Bar No. 174534
mreynolds@swlaw.com
Colin R. Higgins, Bar No. 268364
chiggins@swlaw.com
Cameron J. Schlagel, Bar No. 320732
cschlagel@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone:  714.427.7000
Facsimile:   714.427.7799

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JANE DOE, an individual; JOHN DOE
NO. 1, an individual; JOHN DOE NO.
2, an individual; JOHN DOE NO. 3, an
individual; and JOHN DOE NO. 4, an
individual,

　　　　　　Plaintiffs,

　　v.

ROB BONTA, in his official capacity as
Attorney General of the State of
California; and DOES 1-25, inclusive,

　　　　　　Defendants.

Case No. 3:22-cv-00010-LAB-DEB

**Plaintiffs' Supplemental Brief
Regarding *New York State Rifle &
Pistol Assn., Inc. v. Bruen***

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF
RECORD:**

　　**PLEASE TAKE NOTICE** that Plaintiffs Jane Doe and John Does 1-4
(collectively, "Plaintiffs") respectfully submit this Supplemental Brief in Response
to the Court's Order regarding *New York State Rifle & Pistol Assn., Inc. v. Bruen*,[1]
and in support of Plaintiffs' Motion for Preliminary Injunction,[2] Reply in Support

---

[1] Order Re Suppl. Briefing [ECF No. 47] (the "Order").
[2] Pls.' Mot. for Prelim. Inj. [ECF No. 26] (the "Motion for Preliminary Injunction").

of the Motion for Preliminary Injunction,[3] and Opposition[4] to the Motion to Dismiss filed by Defendant Attorney General Robert Bonta.[5]

In its Order, the Court directed the parties to address two questions:

1.     What standard must the Court apply to Plaintiffs' Second Amendment claims after *Bruen*?

2.     If *Bruen* alters the applicable standard, how should the Court apply that standard to the Motions insofar as they relate to Plaintiffs' Second Amendment claim?

By this supplemental brief, Plaintiffs address each of the Court's questions in turn.

Dated:  July 25, 2022

Respectfully submitted,

SNELL & WILMER L.L.P.

By: _____
Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel
Attorneys for Plaintiffs

---

[3] Pls.' Reply in Supp. of Mot. for Prelim. Inj. [ECF No. 32] (the "<u>Reply</u>").
[4] Pls.' Opp'n to Mot. to Dismiss [ECF No. 38] (the "<u>Opposition</u>").
[5] Def.'s Mot. to Dismiss [ECF No. 36] (the "<u>Motion to Dismiss</u>").

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 7

II. THE APPLICABLE STANDARD IS *BRUEN'S* TEXT AND HISTORY TEST ................................................................................................... 7

   A.   The Text and History Standard Explained ....................................... 9

   B.   The Plaintiff's Burden Explained ................................................... 10

   C.   The Government's Burden Explained .............................................. 11

        1.   The Relevant Timeframe. ...................................................... 12

        2.   The Historical Analogues Must Be Part of the American Tradition. ....... 12

        3.   The Historical Analogues Must Be *Relevantly* Similar. ........................... 13

III. THE TEXT AND HISTORY STANDARD APPLIES HERE BECAUSE THE AB 173 AMENDMENTS BURDEN CORE SECOND AMENDMENT CONDUCT ........................................................... 14

        1.   Purchasing and Acquiring Firearms. ..................................... 15

        2.   Purchasing and Acquiring Ammunition. ................................ 16

        3.   Public Carry of Firearms. ...................................................... 16

IV. THE AB 173 AMENDMENTS FAIL BECAUSE THEY ARE NOT CONSISTENT WITH HISTORICAL FIREARMS REGULATIONS ........ 17

V. THE AB 173 AMENDMENTS IMPERMISSIBLY CHILL THE EXERCISE OF SECOND AMENDMENT RIGHTS ................................. 21

VI. *BRUEN* LENDS ADDITIONAL SUPPORT TO PLAINTIFFS' FOURTEENTH AMENDMENT PRIVACY CLAIMS ............................. 22

VII. CONCLUSION ...................................................................................... 24

SNELL & WILMER

L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

(22cv00010)

Plaintiffs' Supplemental Brief

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

*Andrews v. State,*
50 Tenn. 165 (1871) ............................................................................... 15, 16

*Bauer v. Becerra,*
858 F.3d 1216 (9th Cir. 2017) ...................................................................... 15

*Bellotti v. Baird,*
443 U.S. 622 (1979) .................................................................................... 22

*Biggs v. Sec'y of Cal. Dept. of Corr. & Rehab.,*
717 F.3d 678 (9th Cir. 2013) .......................................................................... 8

*Caetano v. Massachusetts,*
577 U.S. 411 (2016) .................................................................................... 12

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ............................................................................. passim

*Drummond v. Robinson,*
9 F.4th 217 (3d. Cir. 2021) ........................................................................... 13

*Duncan v. Bonta,*
19 F.4th 1087 (2021) .................................................................................... 10

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011) ........................................................................ 15

*Galbraith v. Cnty. of Santa Clara,*
307 F.3d 1119 (9th Cir. 2002) ........................................................................ 8

*Heller v. D.C.,*
(Heller II), 670 F.3d 1244 (D.C. Cir. 2011) ................................................ 13

*Jackson v. City & County of San Francisco,*
746 F.3d 953 (9th Cir. 2014) .................................................................... 7, 16

*Jones v. Bonta,*
34 F.4th 704 (9th Cir. 2022) ............................................................... 7, 15, 16

*Kennedy v. Louisiana,*
554 U.S. 407 (2008) .................................................................................... 13

*Konigsberg v. State Bar of Cal.,*
366 U.S. 36 (1961) ........................................................................................ 9

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

(22cv00010)

Plaintiffs' Supplemental Brief

*Lamont v. Postmaster General,*
   381 U.S. 301 (1965) ............................................................................................21

*Mai v. United States,*
   952 F.3d 1106 (9th Cir. 2020) ...........................................................................7

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ...................................................................................7, 8, 9

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003) .............................................................................8

*NAACP v. Alabama ex rel. Patterson,*
   357 U.S. 449 (1958) .....................................................................................21, 22

*New York State Rifle & Pistol Assn., Inc. v. Bruen,*
   597 U.S. __, 142 S.Ct. 2111 (2022) .........................................................passim

*Planned Parenthood of Se. Pa. v. Casey,*
   505 U.S. 833 (1992) ..........................................................................................21

*Promotions, Ltd. v. Conrad,*
   420 U.S. 546 (1975) ..........................................................................................19

*Talley v. California,*
   362 U.S. 60 (1960) ............................................................................................21

*Teixeira v. County of Alameda,*
   873 F.3d 670 (9th Cir. 2017) ...........................................................................15

*Thornburgh v. American College of Obstetricians and Gynecologists,*
   476 U.S. 747 (1965) ..........................................................................................21

*Thorne v. El Segundo,*
   726 F.2d 459 (9th Cir. 1983) ...........................................................................22

*Young v. Hawaii,*
   992 F.3d 765 (9th Cir. 2021) ......................................................................7, 10

**Statutes**

Cal. Penal Code § 14230(e) ....................................................................................16

Cal. Penal Code § 14236 .........................................................................................16

Cal. Penal Code §§ 14230 & 14231 .......................................................................19

U.S. Const. Amend. 2 ................................................................................................9

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**Other Authorities**

C. Sunstein, *On Analogical Reasoning*,
  106 HARV. L. REV. 741 (1993) .............................................................................12

June 28, 2022 Order *Rupp v. Bonta*, No. 19-56004(9th. Cir.) ..................................8

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Plaintiffs' Supplemental Brief

1
2

# I.
## Introduction

3   The Supreme Court's landmark decision in *New York State Rifle & Pistol*
4   *Assn., Inc. v. Bruen* heralds nothing less than a sea-change in how lower courts are
5   to address Second Amendment challenges.  597 U.S. __, 142 S.Ct. 2111 (2022).
6   Gone is the old two-step framework cobbled together by Courts of Appeal—
7   including the Ninth Circuit—in the aftermath of the *Heller* and *McDonald*
8   decisions.[6]  *Bruen*, 142 S.Ct. at 2129–30.  Instead, the 6-3 majority held that
9   Second Amendment challenges must be reviewed in accordance with the Second
10  Amendment's "text and history."  *Bruen*, 142 S.Ct. at 2129.  The AB 173
11  Amendments fail this test and must be stricken as a result.

12
13
14

# II.
## The Applicable Standard is *Bruen's* Text and History Test

15  Since the Supreme Court's seminal decision in *District of Columbia v.*
16  *Heller*, 554 U.S. 570 (2008) recognized the "Second Amendment right is exercised
17  individually and belongs to all Americans," the lower courts developed a two-step
18  framework to address constitutional challenges to firearm laws.  *See Young v.*
19  *Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (en banc).  The first step asked whether
20  the challenged law burdens conduct protected by the Second Amendment.  *Id.*  If
21  the answer was "yes," then the court would move to the second step of the inquiry,
22  which was to test the means and the end of the law under "the appropriate level of
23  scrutiny."  *Jones v. Bonta*, 34 F.4th 704, 714 (9th Cir. 2022) (citing *Young*, 992
24  F.3d at 785; *Mai v. United States*, 952 F.3d 1106, 1114 (9th Cir. 2020); and
25  *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014)).

26

---

27  [6] The individual rights recognized under the Second Amendment and in *Heller*
28  were incorporated against the fifty states through the Fourteenth Amendment, as set
    forth in *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

This two-step analysis governed every Second Amendment case decided in the Ninth Circuit for more than a decade.  And so the Parties and the Court herein approached the AB 173 Amendments within the same framework.

In *Bruen*, the Supreme Court rejected this ramshackle structure as a misreading of the constitutional analysis prescribed by *Heller* and *McDonald*:

> [I]t is one step too many . . . *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context.  Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Bruen*, 142 S.Ct. at 2127.

As the Court reaffirmed, the Second Amendment does not permit—let alone require—"judges to assess the costs and benefits of firearms restrictions" under means-end scrutiny.  *Id.* at 2129 (quoting *McDonald*, 561 U.S. at 790–91).  Indeed, the Court declined to engage in means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."  *Id.* (quoting *Heller*, 554 U.S. at 634).  "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."  *Id.* (quoting *Heller*, 554 U.S. at 634).

This Court must apply *Bruen's* text and history standard.  Under the Ninth Circuit's law-of-the-circuit rules, courts are bound by a prior circuit decision unless that decision is "clearly irreconcilable with intervening Supreme Court precedent."  *Biggs v. Sec'y of Cal. Dept. of Corr. & Rehab.,* 717 F.3d 678, 689 (9th Cir. 2013) (citing *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003).  "Circuit precedent … can be effectively overruled by subsequent Supreme Court decisions that are 'closely on point' even though those decisions do not expressly overrule the prior circuit precedent."  *Miller,* 335 F.3d at 899 (citing *Galbraith v. Cnty. of Santa*

*Clara*, 307 F.3d 1119 (9th Cir. 2002)).  Not only is the two-step approach irreconcilable with *Bruen's* text and history standard, but *Bruen* expressly abrogated the Ninth Circuit's application of the two-step approach in *Young*. *Bruen*, 142 S.Ct. at 2127; *see also id.* at n.4.  In fact, the Ninth Circuit has already begun vacating and remanding cases in light of *Bruen*.  *See* June 28, 2022 Order *Rupp v. Bonta*, No. 19-56004 (9th. Cir.); June 29, 2022 Order *McDougall v. County of Ventura*, No. 20-56220.  There is no doubt that *Bruen's* text and history standard applies.

### A.  The Text and History Standard Explained.

The Supreme Court "reiterate[d]" in *Bruen* that the standard of review for Second Amendment challenges is the text and history standard (also known as the text, history, and tradition standard):

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S.Ct. at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

"[R]eliance on history to inform the meaning of constitutional text," the Court explained, is "more legitimate, and more administrable, than asking judges to 'make difficult empirical judgments' about 'the costs and benefits of firearms restrictions.'"  *Id.* at 2130 (quoting *McDonald v. Chicago*, 561 U.S. 742, (2010) (plurality opinion)).

Unlike means-end scrutiny, ***no judicial deference is owed to legislative interest balancing***.  *Id.* at 2131.  Rather, the "Second Amendment 'is the very

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*product* of an interest balancing by the people.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)) (emphasis in original)).

In sum, the majority expressly rejected the "two-step" framework adopted by the Courts of Appeal, including the Ninth Circuit. *See id.* at 2129–31.[7]  For all of its prose, *Bruen* can be broken down into three essential holdings:

> 1. "Means-end" testing is gone.  Rational basis, intermediate-level and strict scrutiny no longer apply (and should never have applied) in the Second Amendment context.

> 2. The relevant test for regulations burdening conduct protected by the Second Amendment is whether the regulation is permitted by the text and history of the Second and Fourteenth Amendments.

> 3. The government bears the burden "to affirmatively prove" that the regulation in question is "part of the historical tradition," i.e., not an outlier, of permissible burdens on conduct protected by the Second and Fourteenth Amendments.  *Bruen*, 142 S.Ct. at 2127–31.

**B.     The Plaintiff's Burden Explained.**

The *Bruen* Court was clear: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  142 S. Ct. at 1226.  Thus, when a restriction burdens "the right of the people to keep and bear arms," U.S. Const. Amend. 2, i.e., to own or carry arms "typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S.

---

[7] As if to stamp an exclamation point on its rejection of the old two-step framework, the Supreme Court, less than a week after issuing the *Bruen* decision, granted certiorari and then vacated and remanded the Ninth Circuit's en banc decisions in *Duncan v. Bonta* and *Young v. Hawaii*. *See Duncan v. Bonta*, 19 F.4th 1087 (2021), *certiorari granted and judgment vacated*, __ S.Ct. __, 2022 WL 2347579 (mem) (June 30, 2022); *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), *certiorari granted and judgment vacated*, __ S.Ct. __, 2022 WL 2347578 (mem) (June 30, 2022).

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

at 625, the restriction is presumptively unlawful.  Once the plaintiff makes that showing, the burden shifts to the government.

### C.      The Government's Burden Explained.

The government's burden is heavy.  It must show that the AB 173 Amendments are "consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S.Ct.. at 2131.  To do so, the government must demonstrate the regulation in question shares specific attributes with a "well-established and representative historical analogue." *Id.* at 2133.

Here, that means Defendant must establish (1) the AB 173 Amendments share common features with historically analogous regulations from the 18th to the mid-19th Centuries; (2) the analogues were prevalent, not historical outliers; and (3) the modern regulation and the historical analogues are ***relevantly*** similar, i.e., satisfying the "how and why" factors.  *Id.*

To that end, the *Bruen* Court explained:

> In some cases, [the historical] inquiry will be fairly straightforward.  For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment.  Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.  And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id.*

Plaintiffs' Supplemental Brief

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Other cases implicating "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach," but the meaning of the Second Amendment remains "fixed according to the understandings of those who ratified it." *Id.* at 2132. In *Heller*, for example, the Court recognized one way "in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'" *Id.* (quoting *Heller*, 554 U.S. at 582). Instead, just as the First and Fourteenth Amendments protect modern forms of communications and search, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582; *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (*per curiam*) (stun guns).

### 1.   The Relevant Timeframe.

The historical analogues must be from the relevant timeframe, generally between the 18th and mid-19th centuries. *Bruen*, 142 S.Ct. at 2127–28; *but see id.* at 2163 (Barrett J., concurring) (noting that the Court did not definitively decide if the relevant timeframe was 1791 or 1868). Any 19th century precedent, however, is "secondary," and "'treated as mere confirmation of what the Court thought had already been established.'" *Id.* at 2137 (citation omitted). Indeed, the Court cautioned "against giving postenactment history more weight than it can rightly bear." *Id.* at 2136. Accordingly, late-19th and 20th century precedents cannot be used to contradict precedents from the 18th to mid-19th centuries. *Id.* at 2154 n.28.

### 2.   The Historical Analogues Must Be Part of the American Tradition.

The historical analogues must also reflect "an enduring American tradition of state regulation" on the right to keep and bear arms. *Id.* at 2155. The Court

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 12 -

expressed doubt that three colonial-era regulations—there were only 13 colonies—were sufficient to establish a tradition. *Id*. at 2143; *Heller v. D.C. (Heller II)*, 670 F.3d 1244, 1292 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (Identifying six states is not enough to make the "strong showing that such laws are common.") (citing *Kennedy v. Louisiana,* 554 U.S. 407, 423–26 (2008)). The Court also looked at the size of the population affected by and the length of time the restriction was in effect to determine if it established a tradition. *Id*. at 2154–55 (discounting western territorial laws that affected less than one percent of the population during the territories' transition to statehood).

### 3.   The Historical Analogues Must Be *Relevantly* Similar.

The modern and historical regulations must be "'relevantly similar.'" *Id*. at 2132 (quoting C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)). In other words, the modern and historical restrictions must do more than "'remotely resemble[]'" each other. *Id.* at 2133 (quoting *Drummond v. Robinson*, 9 F.4th 217, 226 (3d. Cir. 2021)).

> And because "[e]verything is similar in infinite ways to everything else," one needs "some metric enabling the analogizer to assess which similarities are important and which are not[.]" For instance, a green truck and a green hat are relevantly similar if one's metric is "things that are green." They are not relevantly similar if the applicable metric is "things you can wear."

*Bruen*, 142 S.Ct. at 2132 (internal citations omitted).

In assessing applicable metrics, the *Bruen* majority noted that *Heller* and *McDonald* point toward at least two metrics: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. As set forth below, the AB 173 Amendments fail the "how and why" metrics.

SNELL & WILMER

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

### III.
### The Text and History Standard Applies Here Because the AB 173 Amendments Burden Core Second Amendment Conduct.

The AB 173 Amendments are a regulatory burden on three core facets of conduct protected by the Second Amendment's text: (1) the acquisition and purchase of firearms; (2) the acquisition and purchase of ammunition; and (3) applying for, obtaining and renewing a license to carry firearms publicly.[8]  The test is the same with respect to all three facets.  *Bruen*, 142 S.Ct. at 2138 ("the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry").

It is now irrelevant whether the burden on Plaintiffs' Second Amendment rights is outweighed by the State's interest.  The Supreme Court expressly rejected any "interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests."  *Id.* at 2129 (quoting *Heller*, 554 U.S. at 634) (internal quotation marks omitted).

As set forth below, the AB 173 Amendments burden core Second Amendment rights—they apply to ***all*** firearms and ammunition acquired and carried by law-abiding citizens.  As a result, the government must affirmatively show that they are consistent with the historical understanding of the Second Amendment and within the realm of prevalent historically permissible regulations

---

[8] In their First Amended Complaint, Motion and Opposition, Plaintiffs explain California's complex firearms regulatory scheme and where the AB 173 Amendments fit in that scheme. *See* Motion for Preliminary Injunction at 11:25–18:17; Opposition at 10:23–18:8 (citing First Amended Complaint).  In short, to purchase firearms and ammunition, or to obtain a license to carry a concealed firearm, Californians must provide their Personal Information to Cal DOJ, which then stores it in its Databases.  Now, under the AB 173 Amendments, Cal DOJ must provide Plaintiffs' Personal Information to third-party researchers, *without limitation*.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

on conduct protected by the Second Amendment.  *Id.* at 2127–30.

### 1. Purchasing and Acquiring Firearms.

The Second Amendment's plain text covers the right to acquire a firearm. The Ninth Circuit has recognized the "right to possess a firearm includes the right to purchase one" and, therefore, "commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense." *Jones*, 34 F.4th at 715 (citing *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017)); *see also Heller*, 554 U.S. at 616–19; *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017). "Without the right to obtain arms, the right to keep and bear arms would be meaningless." *Jones*, 34 F.4th at 716; *see also Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms).  The clarity of this proposition is matched by its longevity in reported decisions going back to ratification of the Fourteenth Amendment.  *See Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them … and to purchase and provide ammunition suitable for such arms.").

California's legislative framework, onto which the AB 173 Amendments are grafted, unquestionably covers the protected conduct in question, i.e., purchasing or otherwise acquiring common firearms.  In addition to California's laws that impose various and sundry conditions on the acquisition of firearms, the AB 173 Amendments further condition purchasers' exercise of their Second Amendment right on authorizing Cal DOJ to share their Personal Information with third-party researchers for policy and so-called "epidemiological" research.

This bureaucratic smothering of the ownership of constitutionally-protected firearms and ammunition itself infringes the right to keep and bear arms.  But worse, the AB 173 Amendments force law-abiding Californians to choose between maintaining their personal privacy and lawfully exercising their Second

Amendment rights.  In effect, Plaintiffs must either agree to give up their privacy to third-party researchers—for policy research, not law enforcement—or not exercise their fundamental Second Amendment rights.  Because the Databases are updated with each new firearm or ammunition purchase, the AB 173 Amendments continue to burden the Second Amendment rights of Plaintiffs and millions of Californians.

### 2.   Purchasing and Acquiring Ammunition.

Common ammunition is a type of "arm," as that term was historically understood; therefore, the Second Amendment protects the right to acquire it. *Jones*, 34 F.4th at 716 ("Still, because 'without bullets, the right to bear arms would be meaningless,' we held that 'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them."  (citing *Jackson*, 746 F.3d at 960)).  Again, this proposition is supported by decisions going back over 150 years to the ratification of the Fourteenth Amendment.  *See Andrews*, 50 Tenn. at 178 ("The right to keep arms, necessarily involves the right to purchase them … and to purchase and provide ammunition suitable for such arms.").

As with the acquisition of firearms, the AB 173 Amendments add to the myriad restrictions on the acquisition of ammunition by conditioning the purchasers' exercise of their Second Amendment rights on authorizing Cal DOJ to share their Personal Information with third-party researchers for policy and so-called "epidemiological" research.

### 3.   Public Carry of Firearms.

Finally, the public carry of firearms, i.e., the right to bear arms, is likewise a core Second Amendment right: "We therefore turn to whether the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for self-defense.  We have little difficulty concluding that it does."  *Bruen*, 142 S.Ct. at 2134.

*Bruen* also established that there is no historically significant tradition—i.e., tied to the founding era or the era of Reconstruction—to support New York's broad prohibition on public carry of firearms for self-defense. *Id.* at 2138 ("apart from a handful of late-19th-century jurisdictions, the historical record compiled by respondents does not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense").

## IV.
### The AB 173 Amendments Fail Because They Are Not Consistent with Historical Firearms Regulations

The text and history test requires striking down the AB 173 Amendments. As set forth above, the AB 173 Amendments unquestionably impose upon at least three fundamental freedoms protected by the Second Amendment. Defendant must now meet his burden of proving the AB 173 Amendments are consistent with America's historical tradition of firearms regulation.[9]

Defendant cannot meet this heavy burden because he cannot possibly demonstrate common historically permissible analogues to his self-described new, fresh and "trailblazing" approach to addressing gun violence;[10] an "epidemiological

---

[9] Stated another way, Plaintiffs' proposed courses of conduct are to purchase firearms and ammunition and to apply for a Carry License without having their confidential Personal Information divulged to policy researchers (and the wider public) for non-law enforcement purposes. Because this conduct is protected by the Second Amendment, Defendant bears the burden to show the conditions imposed by the AB 173 Amendments are historically permissible. *Id.* at 2130, 2134–36. Only if Defendant carries that burden can he show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect the proposed course of conduct. *Id.*

[10] Def.'s Opp'n to Mot. For Prelim. Inj. [ECF No. 29] at 16:26–17:31; *see also* Cal. Penal Code § 14236 (requiring CFVRC to develop education and training programs that address firearm violence as a public health problem).

(22cv00010)

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626/2689

approach" that, according to the State, has never been taken before.[11]  That is because, according to Defendant, California is the first State in the union to take the entirely novel approach of conditioning the exercise of core Second Amendment rights on consenting to government dissemination of Personal Information to third parties for policy research purposes.[12]  Indeed, California's legislature lauds the State's "uniquely rich [firearm owner] data" that makes possible research that supposedly cannot be done elsewhere.  Cal. Penal Code § 14230(e).  It further directs the CFVRC to work with policymakers to develop and implement "innovative" firearms restrictions.  *Id.* § 14231(a)(2).  The absence of historically analogous regulations was fatal to the laws that were struck down in *Heller* and *Bruen*; Defendant's inability to produce those analogues here likewise dooms the AB 173 Amendments.

Instead, Defendant woefully attempts to draw a connection between (1) the "new circumstances" of "large computer systems that allow the collection of storage of information and the advent of researchers who use data to study firearm violence" and (2) California's "closely related" 1917 firearms law "requiring firearms dealers to 'keep a register' containing information about each handgun sold and its purchaser."[13]  "Both laws," according to Defendant, "involve information disclosures to third parties enacted to help address firearm violence."[14]  This connection fails for at least four reasons.

First, the Supreme Court specifically held that such analogues, from a period so attenuated from the ratification of the Second and Fourteenth Amendments, are not enough to establish a historical exception to the Second Amendment's broad guarantee.  *See Bruen*, 142 S.Ct. at 2131–32, 2154–56; *see also id.* at 2163 (Barrett,

---

[11] Decl. of Garen Wintemute [ECF No. 29] ¶ 33.

[12] *See* Def.'s Opp'n at 29:8–31:14; Motion to Dismiss at 29:12–32:2.

[13] *See* Motion to Dismiss at 21:7–11; *see also* Def.'s Opp'n at 22:13–16 (incorporating argument from Motion to Dismiss).

[14] Motion to Dismiss at 21:12–13.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

J., concurring).  The Supreme Court in *Bruen* admonished that 20th century legislation could not serve as a "well-established and representative historical analogue."  *See id.* at 2131–32, 2154–56.

California's 1917 law, like the 1911 law at issue in *Bruen*, was enacted far too late to provide meaningful insight into the purposes and contours of the Second Amendment right.  *Id.*  Indeed, the Court held in *Bruen* that even late-19th century laws do not "provide much insight into the meaning of the Second Amendment." *Id.* at 2154.  Evidence from that period is relevant only if it confirms "the *public understanding* of [the Second Amendment] after its . . . ratification."  *Id.* at 2136 (quoting *Heller*, 554 U.S. at 605).  But even then, evidence of "post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text," like the evidence Defendant proffers here, does not "overcome or alter" the Second Amendment's broad guarantee.  *Id.* at 2137 (citations omitted).

Second, even if a 1917 law could provide meaningful insight into the original understanding of the Second Amendment, it would still not be enough.  A single statute cannot show "an enduring American tradition of state regulation" on the right to keep and bear arms.  *Id.* at 2155.  Defendant must identify more, and he has not done so.

Third, gun violence is not a new problem.[15]  But society has traditionally dealt with it by criminalizing the negligent, reckless, and intentional misuse of firearms and preventing prohibited people from obtaining them—not by forcing law-abiding citizens to choose between exercising their Second Amendment rights

---

[15] *See, e.g.*, *Aaron Burr Slays Alexander Hamilton in Duel*, History.com (last accessed July 18, 2022), https://www.history.com/this-day-in-history/burr-slays-hamilton-in-duel; *Alexander Hamilton is Killed by Aaron Burr in A Duel*, Weekly Raleigh Register (July 23, 1804), *available at* https://www.newspapers.com/clip/31830517/alexander-hamilton-is-killed-by-aaron/.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

and giving up their privacy to third parties.  *Cf. Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975) ("[A] a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand.").[16]  Indeed, Defendant has boasted—as has Professor Wintemute—that the AB 173 Amendments represent a new and fresh approach to gun violence that has never been taken before.  And they are right: California's approach is constitutionally unheralded.  It is hard to fathom that the 18th century public understanding of the Second Amendment right included unwitting and unwilling submission to epidemiologic and policy research as a condition on the exercise of any fundamental right.  *Cf. Bruen*, 142 S.Ct. at 2131–32, 2154–56.  The AB 173 Amendments fail the "how" factor.

Fourth, Defendant's analogy is incongruent on its face.  The 1917 California law was designed with law enforcement functions in mind—helping to locate the owner of a lost or stolen firearm, or tracing a gun found at a crime back to its original purchaser.  Sale records 105 years ago were held in the most decentralized manner imaginable—by thousands of individual retailers.  The AB 173 Amendments, by contrast, involve the centralized collection of massive amounts of personal identifying data and the governmental dissemination of that data to third parties for "epidemiological" and policy research.[17]  So the AB 173 Amendments also fail the "why" factor.

---

[16] It is notable that the Supreme Court contrasted surety statutes in the early Republic because they were not laws of general application, but were granularly-targeted to specific individuals who posed a criminal threat.  *Bruen*, 142 S.Ct. at 2144–45.  In comparison, the AB 173 Amendments do not focus on those who criminally misuse firearms (the traditional means by which government responded to the problem of gun violence), but widely cast their net over the entirety of the gun- and ammunition-purchasing public.

[17] *See, e.g.*, Cal. Penal Code §§ 14230 & 14231 (legislative findings and purpose of the CFVRC); Motion to Dismiss at 5:19–6:12 & 14:5–15:3 (explaining that the state's interest is in researching and preventing firearm violence).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

The historical evidence overwhelmingly demonstrates there is no analogue to the AB 173 Amendments within the text and tradition of constitutionally-permissible burdens on Second Amendment rights. The AB 173 Amendments must therefore be invalidated.

## V.
## The AB 173 Amendments Impermissibly Chill
## the Exercise of Second Amendment Rights

In *Bruen*, the Court favorably compared the Second Amendment to the First Amendment. *See Bruen*, 142 S.Ct. at 2132, 2138, 2156. This lends support to Plaintiffs' argument that the chilling doctrine properly applies to Second Amendment rights; i.e., that the AB 173 Amendments chill law-abiding citizens from exercising their Second Amendment rights out of fear of losing their right to privacy.[18]

In other contexts, including the First Amendment, the Court has "consistently refused to allow government to chill the exercise of constitutional rights by requiring disclosure of protected, but sometimes unpopular, activities." *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 767 (1965), *overruled in part on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *see also Lamont v. Postmaster General*, 381 U.S. 301, 306–07 (1965) (invalidating USPS requirement that addressee request delivery of "communist" materials in order to receive them); *Talley v. California*, 362 U.S. 60, 64–65 (1960) (municipal ban on unsigned handbills); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462–65 (1958) (disclosure of NAACP membership list).

---

[18] This is especially poignant for the hundreds of thousands of Californians who were victims of Defendant's data release on June 27, 2022.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

It is inherent in the concept of constitutional rights that each "may be exercised without public scrutiny and in defiance of the contrary opinion of the sovereign or other third parties." *Bellotti v. Baird*, 443 U.S. 622, 655 (1979) (Stevens, J., concurring). Public disclosure is therefore barred if it would suppress, curtail, discourage, dissuade, or otherwise deter the free exercise of protected liberties. *NAACP*, 357 U.S. at 461–63.

Here, Plaintiffs provided their Personal Information to the Cal DOJ only because they were required by law to do so as a condition of exercising their Second Amendment rights. Cal DOJ's disclosure of that Personal Information to third parties dramatically increases the risk that sensitive information will be made public—as Cal DOJ's egregious June 27 data release shows.[19] Because of that risk—or implicit threat—countless Californians will be deterred from exercising their Second Amendment rights.

## VI.
### *Bruen* Lends Additional Support to Plaintiffs' Fourteenth Amendment Privacy Claims

From the outset, Plaintiffs have argued their privacy rights have been violated because the AB 173 Amendments lack an objective standard. Plaintiffs' position is that when the challenged law "directly intrude[s] on the core of a person's constitutionally-protected privacy . . . , an unbounded, standardless inquiry, even if founded upon a legitimate state interest, cannot withstand the heightened scrutiny with which [the Court] must view the state's action." *Thorne v.*

---

[19] Even if the Cal DoJ's outrageous data release on June 27 is not attributable to the private and public researchers at issue in ***this*** lawsuit, it is highly relevant because it belies Defendant's protestations that such vast quantities of data can be amassed, stored and disseminated without risk of improper disclosure. The more people in possession of this information, the greater the risk of unauthorized and harmful release.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*El Segundo*, 726 F.2d 459, 470 (9th Cir. 1983).

*Bruen* also supports Plaintiffs' argument that the AB 173 Amendments violate their Fourteenth Amendment privacy rights because they lack a "narrow, objective, and definite standard[]" by which to judge third-party researchers' purported "need" for Plaintiffs' Personal Information.

Though not directly on point, *Bruen* lends credence to Plaintiffs' position.  In *Bruen*, the Supreme Court drew a critical distinction between (1) the constitutionally-valid "shall-issue" licensing regimes of 43 States which "contain only 'narrow, objective and definite standards' guiding licensing officials," and (2) the heavily-discretionary and constitutionally impermissible "may-issue" licensing regimes of New York, California and other jurisdictions "requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion[]'" in connection with the licensing decision.  *Bruen*, 142 S.Ct. at 2138 n.9.

Likewise, the AB 173 Amendments lack objective standards, guidelines, definitions or limitations that guide or circumscribe Cal DOJ's discretion to provide third-party researchers with protected Personal Information.  *Cf. id.*; *see also id.* at 2161 (Kavanaugh, J., concurring) ("Those features of New York's regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many 'ordinary, law-abiding citizens.'").  Instead, the AB 173 Amendments vest that discretion entirely in third-party researchers themselves, without scrutinizing whether they legitimately require personal identifying, individual-level data for their research.[20]

---

[20] Finally, Justice Breyer's extensive reliance on statistics in his *Bruen* dissent disproves Defendant's argument that without access to individual-level data "important research cannot be done."  *Compare Bruen*, 142 S.Ct. at 2164–68 (Breyer, J., dissenting) (extensively citing various firearms statistics), *and id.* at 2157–59 (Alito, J., concurring) (same), *with* Motion to Dismiss [ECF No. 36] at 16:17–20.  While Defendant's argument, like Justice Breyer's dissent, is relevant chiefly to the means-end testing proscribed by *Bruen*, it is at least noteworthy that the dissenting justices were able to access volumes of information without resort to

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# VII.
## Conclusion

The AB 173 Amendments fail scrutiny under the text-and-history standard. They place unprecedented burdens on the core Second Amendment rights to purchase a firearm and ammunition and to lawfully carry a weapon for self-defense. Defendant, for his part, has not produced—and cannot produce—any historical analogue from the founding or reconstruction periods.

Based on the foregoing, particularly in view of *Bruen*, Plaintiffs have not only stated valid claims under the Second and Fourteenth Amendments, they have demonstrated a high likelihood of success on the merits.[21]  Plaintiffs thus respectfully reiterate their request that the Court grant their Motion for Preliminary Injunction and deny Defendant's Motion to Dismiss.  Plaintiffs further request that the Court schedule a status conference regarding trial, motion and discovery-related dates.

Dated:  July 25, 2022            Respectfully submitted,

SNELL & WILMER L.L.P.

By: _____
       Michael B. Reynolds
       Colin R. Higgins
       Cameron J. Schlagel
       Attorneys for Plaintiffs

4883-0635-0123.1

---

Professor Wintemute's vast reservoirs of "epidemiological" research data collected from unwitting and unwilling subjects.

[21] At least one district court has already applied *Bruen* and temporarily enjoined a Colorado ordinance regulating the possession, use, transfer, and sale of certain weapons.  *See* Temporary Restraining Order [ECF No. 18], *Rocky Mountain Gun Owners, et al. v. Town of Superior, et al.*, Case No. 22-cv-01685-RM (D. Colo. July 22, 2022).

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689